David M. PALLEY, Plaintiff,

v.

McDONNELL COMPANY and Hycon Mfg.
Company, Defendants.

Court of Chancery of Delaware,
New Castle.

June 28, 1972.

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, and Nathan B. Kogan, New York City, for plaintiff.

Richard F. Corroon, of Potter, Anderson & Corroon, Wilmington, for defendant McDonnell Co.

S. Samuel Arsht, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Hycon Mfg. Co.

MARVEL, Vice Chancellor:

Plaintiff, who was a common stockholder of the defendant Hycon Mfg. Co. prior to the elimination of his stock in such corporation as the result of the merger of Hycon into Actron Industries, Inc., a wholly-owned subsidiary of what was originally known as McDonnell Aircraft Corporation,[1] filed this derivative suit on behalf of his former corporation, Hycon, for damages allegedly caused the latter by its parent McDonnell prior to the aforesaid merger which rendered plaintiff's primary cause of action moot. Plaintiff has no objection to the merger in question, pointing out that it brought about what his cause of action sought to accomplish.

In his amended complaint plaintiff charged the defendant McDonnell, the former holder of almost 56% of the common stock of Hycon, with specified breaches of fiduciary duty in connection with its dealings with its former subsidiary. However, the only relief actively sought by plaintiff prior to the corporate action which rendered his case moot was the cancellation of 184,127 shares of stock of Hycon issued to McDonnell on February 5, 1965. In other words, the very thing which plaintiff primarily hoped to gain by the successful prosecution of this law-

1. Later McDonnell Company and ultimately McDonnell Douglas Corporation.

suit was accomplished by the merger of Hycon into Actron Industries, Inc.

The gist of plaintiff's amended complaint was the obtaining of an order rescinding the sale by Hycon to the defendant McDonnell of 184,127 shares of the latters' 6½% cumulative non-participating second preferred stock, it being plaintiff's contention that such sale had been foisted on Hycon by McDonnell at a price which was unfair to Hycon in a transaction which could have resulted in a greater profit to McDonnell on conversion of said shares to common stock and their later sale. Also sought in the complaint was a general accounting concerning other corporate action forcibly taken in Hycon's name by McDonnell's management to the benefit of the latter and the injury of the former, it being charged that Hycon, as a result of having been improperly controlled by its parent, McDonnell, had been caused to enter into certain contracts which required it to sell its products to McDonnell at inappropriately low prices with resulting injury to Hycon.

Notwithstanding the fact that what plaintiff sought ultimately to recover for his corporation as a result of his prosecution of this lawsuit was actually accomplished by the merger referred to above, he now seeks a fee for his attorneys as well as an allowance of expenses, including those of his accountants, incurred during the course of this litigation on the theory that his cause of action having allegedly had merit prior to its having been rendered moot by the defendant McDonnell's actions in bringing about cancellation of the shares of stock here in controversy, he is nonetheless entitled to such allowances, Chrysler Corporation v. Dann, 43 Del.Ch. 252, 223 A.2d 384.[2] The defendant McDonnell does not contend that plaintiff's amended complaint could not

have survived a motion to dismiss but denies that plaintiff's case, at the time of its termination, had any reasonable hope of ultimate success. Also implicit in plaintiff's application is the contention that there was a so-called causal connection between the pendency of his action and the merger which accomplished what plaintiff had sought to gain, although it is contended that such a connection is not a prerequisite to the recovery of fees and expenses in a situation such as the one found here, Rosenthal v. Burry Biscuit Corp., 42 Del.Ch. 279, 209 A.2d 459, the cited case also being authority for the proposition that where a case has been rendered moot by action of the defendant, the burden is on the latter of showing that the action taken, as prayed for, " * * * was not in any way occasioned by the existence of the lawsuit * * * ".

Before its merger into Actron Hycon was principally engaged in the manufacture of specialized military equipment with emphasis on panoramic cameras for use in military aircraft. In August 1962, Hycon received an order from McDonnell for the manufacture of such type of camera for installation in aircraft then being manufactured by the latter for the United States Armed Forces. As of December 1963, the value of cameras purchased by McDonnell under said order had reached a total of some eleven million dollars. In February 1964, a second order for similar reconnaissance cameras was received by Hycon from McDonnell, such second order amounting to some six and one-half million dollars. Both of the orders above referred to were declared to be subject to renegotiation in the event that price increases in the cameras should appear to be appropriate, a dubious advantage to Hycon, as it turned out, once McDonnell's control over Hycon had become firmly established.

2. "A claim is meritorious within the meaning of the rule if it can withstand a motion to dismiss on the pleadings if, at the same time, the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success. It is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope."

■■ Meanwhile, as the development and manufacture of the cameras in question progressed, Hycon began to experience financial problems in its efforts to maintain an adequate operating capital account with which to complete performance of its contracts with McDonnell. In order to meet such capital demands, Hycon, with the approval of a majority of its shareholders, thereupon sold a total of 918,202 shares of its common stock to McDonnell at a price of $6.25 per share, the total payment realized as a result of such transaction being $5,738,766. Such sale resulted in McDonnell's acquiring approximately 56% of Hycon's common stock, thus giving the latter control of Hycon, and placing McDonnell in a position in which it was required to deal with Hycon within the strictures of the rule of intrinsic fairness which governs the conduct of a parent toward a subsidiary during the course of a transaction accomplished without the participation of the subsidiary's minority stockholders. See Sinclair Oil Corp. v. Levien, Del.Supr.Ct., 280 A.2d 717. And it is clear on the record here that prior to the transaction complained of Hycon and McDonnell had been engaged in price negotiations as to the appropriate price which the latter should pay for the former's cameras and that McDonnell, in control of the so-called bargaining, had demonstrated little interest in taking a reasonable position as to what Hycon should be paid for its product, thus failing to practice that high degree of fairness required of a parent in its dealings with its subsidiary in an arrangement which might prove detrimental to the latter's minority stockholders, particularly in a transaction in which the parent well knew that its subsidiary was in apparent financial straits. In fact, there is some indication in the record before me that McDonnell, in a dominating position, had encouraged Hycon to write off development costs on its cameras, thereby creating a deficit in its retained earnings and giving its overall financial picture a gloomier aspect than realities called for.

Notwithstanding the additional capital thus acquired by Hycon from McDonnell in May of 1964 after what appeared to have been the successful production of the type of cameras ordered by McDonnell, Hycon had meanwhile become aware, as a result of flight tests, that major redesigning of its camera would be required in order for it to meet the standards fixed by McDonnell. Such redesigning resulted in the incurring of additional losses on the part of Hycon, such losses eventually totalling some four and one-half million dollars, thus creating a further deficit in such corporation's working capital. In an attempt to solve its capital account problems resulting from such losses, Hycon, while giving consideration to a public issue of its stock, was again almost inevitably compelled to turn to McDonnell for financial assistance and the corporate transaction which then took place furnishes the basis for that part of plaintiff's complaint, as amended, as to which plaintiff was in the course of seeking relief at the time his cause of action became moot.

The actual transaction attacked by plaintiff, namely the sale to McDonnell in 1965 of 184,127 shares of Hycon second preferred shares at a cost of $10 per share, was patently designed to raise further working capital for Hycon. The class of shares sold to McDonnell by Hycon as a result of the controversial transaction here in issue called for the payment of preferred dividends at the rate of 6½% per annum with provision for a preference payment in the event of dissolution. Said shares were also made subject to being converted into common shares of Hycon at a price of $5.50 per share. Just prior to the transaction complained of Hycon common shares had been trading on the American Stock Exchange at between $4 and $9 per share, the average price for the trading period in question being approximately $7 per share.

Plaintiff's application for attorneys' fees and expenses incurred in connection with this litigation is opposed on two grounds: (1) that plaintiff is barred under either principles of res judicata or collateral es-

toppel from further prosecution of this action by reason of the March 12, 1965 ruling of the California Corporation Commissioner which granted a permit for the sale in question on the ground that the transaction attacked by plaintiff in this action was fair, just and equitable, at least as to McDonnell, the purchaser of the shares in question, after a hearing, notice as to which was given to all Hycon stockholders, including plaintiff, but in which neither plaintiff nor his counsel participated, or (2) in the event that the decision of the California Corporations Commissioner is not deemed to be controlling here, that plaintiff has not met the burden imposed on an applicant for attorneys' fees and expenses in a situation in which his derivative action has been rendered moot prior to its trial or settlement.

The defendant McDonnell contends, first of all, that under principles of either res adjudicata or collateral estoppel the decision of the California Corporations Commissioner serves to bar further prosecution of this action inasmuch as plaintiff's derivative action in this Court is primarily based on an attack on the very transaction which was passed upon favorably in the California proceeding, namely the fairness of the now rescinded sale of Hycon stock to McDonnell. It is accordingly argued that this case must be deemed to have been without merit as of the time of plaintiff's pending application and that plaintiff is therefore not entitled either to counsel fees or expenses despite the fact that a " * * * great deal of work was done, and doubtless in the best of faith", Gottlieb v. Heyden Chemical Corp., 34 Del.Ch. 436, 105 A.2d 461. No application was made for a hearing on the substantive merit of plaintiff's cause of action prior to the briefing[3] stage. Such issue will therefore be decided on the basis of the present record.

The defendant McDonnell has not cited a precise Delaware precedent in support of its theory that an administrative decision, such as that of the California Corporation Commission involved here, can be successfully relied on to bar further litigation in this Court concerning the same subject matter which was reviewed in the California proceeding, general reliance being placed on the accepted principle set forth in 2 Am. Jur.2d Adm.Law, § 502, namely that:

"An administrative determination may also operate by way of collateral estoppel (or res judicata in a limited sense) in a subsequent proceeding in regard to the parties in a prior proceeding and as to matters actually and legally determined therein."

See also comment of the Court in the case of Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, rehearing denied 321 U.S. 801, 64 S.Ct. 483, 88 L.Ed. 1088, to the effect that this Court must give full faith and credit to an administrative ruling of a sister state.

However, in an administrative hearing, such as the one relied on here by McDonnell as a bar to plaintiff's application for fees and expenses on the ground that the hearing officer in question had passed on the fairness of the basic transaction put in issue by the pleadings in this case, an objecting minority stockholder,[4] such as plaintiff here (who, in fact, did not participate in such proceeding) does not have access to the broad discovery procedures available under contemporary court rules. Furthermore, for a minority stockholder to contest the fairness of a transaction, such as the one reviewed before the California Commissioner, would necessarily require a substantial outlay of moneys for counsel fees and expenses, a burden, which, in a success-

3. McDonnell's brief states at p. 37: "We submit that the statement of facts herein, the affidavits and the entire record demonstrate that plaintiff's cause lacks merit."

4. Apparently forty stockholder letters were received by the Commissioner concerning the transaction in issue, twenty of which were for it and twenty opposed. In addition, the California Commissioner's notice of the hearing indicates a primary interest in the fairness of the transaction to the purchaser and not to the seller.

fully maintained derivative suit, is obviated by the Court's power to allow reasonable attorneys' fees and costs.

■ In short, I am of the opinion that the California corporate administrative proceeding here relied upon, though concerned with the basic transaction here in issue but which evidently failed to receive evidence of Hycon's improving financial picture, does not have a controlling effect upon the decision of this Court on the pending application anymore than the California Commission and courts would be bound by a corporate ruling in a companion matter pending in this Court. See In Re Western Airlines, Inc., 37 Del.Ch. 267, 140 A.2d 777. There being two independent systems with jurisdiction over the activities of a Delaware corporation doing business in California, it follows that this Court, particularly in a derivative stockholders' suit, should not consider itself bound by the administrative law of California. Compare Weisberg v. Hensley, Del.Ch., 278 A.2d 334, in which this Court stated:

"I am of the opinion that this so-called finding by an administrative agency of the State of Kentucky is not binding on this Court in a suit based on a claim of alleged breach of fiduciary duty and that plaintiff should be furnished an opportunity to seek to demonstrate in this Court that such finding is not supported by the relevant facts or pertinent law."

■ In any event, the California proceeding, in my opinion, was not the type of case in which an administrative body such as the Securities Exchange Commission is vested with plenary jurisdiction. See Standard Power & Light Corporation v. Investment Associates, Inc., 29 Del.Ch. 593, 51 A.2d 572, and Auerbach v. Cities Service Co., 36 Del.Ch. 554, 134 A.2d 846. Rather, this was a proceeding, which, because of no genuine minority stockholder participation of an adversary nature did not result in a truly judicial or quasi judicial ruling on the issue drawn in this case.

Compare Taylor v. Hatzel & Buehler, Del. Supr., 258 A.2d 905.

■ I turn next to the negotiations carried on between Hycon and McDonnell in the light of their respective contentions concerning a fair price to be paid for Hycon's cameras which negotiations culminated in the consummation of the transaction attacked in the amended complaint. Giving particular consideration to the Roudebush memorandum, the contemporaneous views of the affiant Burson, and the failure of the Hycon directors, Hunter and Piper, to be allowed to negotiate freely for Hycon's benefit with full knowledge of what the transaction was all about, I am satisfied that application of the intrinsic fairness test, which, in my opinion, is clearly applicable here, leads to the conclusion that prior to the rendering moot of this case a reasonable likelihood existed that plaintiff would have prevailed, at least to some extent, had the case gone to trial, there being some question raised by the papers before me whether or not Hycon actually needed the full amount of the funds made available to it in the transaction in issue particularly on terms which created a tax advantage for McDonnell, Chrysler v. Dann, supra. And the fact that there is no precise dollar basis for evaluating the benefits gained by the setting aside of the transaction which plaintiff sought to achieve by this action does not mean that the ultimate results of such cause of action were without benefit to the minority stockholders of such corporation, Mencher v. Sachs, 39 Del.Ch. 366, 164 A. 2d 320. Compare Rosenthal v. Burry Biscuit Corporation, supra. Moreover, plaintiff contends that aside from benefits which might have been achieved by Hycon had the equivalent of arms' length negotiations on a proper price for its cameras been brought about, thus lessening Hycon's need for additional capital, had the stock in question not been cancelled the potential profit to McDonnell at the inception of the transaction complained of was estimated at possibly somewhat less than $1,000,000 (later increased to the estimated sum of over

$6,000,000, taking into consideration the conversion rights of such preferred stock), although, of course, McDonnell did not convert the preferred stock in question to common stock.

■ Next, while it is established that a plaintiff, in order to recover fees and expenses, need not affirmatively demonstrate that the corporate action which rendered his case moot was induced by the prosecution of his cause of action, Rosenthal v. Burry Biscuit Co., supra, I am not satisfied, in light of McDonnell's resistance just prior to the time this case was rendered moot by merger to plaintiff's efforts to take the depositions of such corporation's key personnel, including that of Mr. Mc-Donnell, its board chairman, concerning the transaction in issue, that there was, in fact, no connection between the pendency of this case and the merger which brought about the action sought by plaintiff, namely the cancellation of Hycon's second preferred stock. Compare Murray v. Lapides, Jan. 7, 1966, C.A. 3042, D.Ct.Del.

■ Turning to the question of plaintiff's application, it is customary in a case in which a plaintiff has petitioned for an allowance of fees and expenses to take testimony as to the efforts exerted by plaintiff's attorneys and accountants. However, in the case at bar, while the brief of the defendant McDonnell points out that no breakdown was furnished in plaintiff's petition, the estimate of a total of 1,400 hours allegedly devoted to this case by plaintiff's counsel and accountants is not questioned. Of this total number of hours of work on the case, 800 were spent by the accountants and 600 by the attorneys. The total amount requested by plaintiff for his attorneys' fees and the expenses of his accountants is $250,000, of which $185,000 is sought for his attorneys and $65,000 for his accountants.

In my opinion, the amount requested by plaintiff is excessive whether measured in reference to the estimated results accomplished by his action under the facts and circumstances of record or on an hourly basis. I conclude that a total amount of $125,000 is an appropriate amount to be applied to plaintiff's fees and expenses, an allowance which is to be divided between his counsel and accountants in such proportions as shall be determined by plaintiff and such individuals. Expenses incurred by plaintiff in this litigation in the amount of $5,071.36 will also be allowed.

On notice, an appropriate form of order may be submitted.