Harry LEWIS, Plaintiff,

v.

SCOTTEN DILLON COMPANY and
Iroquois Industries, Inc.,
Defendants.

Court of Chancery of Delaware,
New Castle.

May 16, 1973.

Irving Morris and Joseph A. Rosenthal,
of Cohen, Morris & Rosenthal, Wilmington

and Leonard I. Schreiber, New York City, for plaintiff.

Louis J. Finger, of Richards, Layton & Finger, Wilmington and Gerard A. Dupuis, of Mudge, Rose, Guthrie & Alexander, New York City, for defendant Iroquois Industries, Inc.

DUFFY, Chancellor:

The determinative issue is whether fees should be allowed to plaintiff's attorneys (and accountants) in this derivative stockholder action. This is the decision after final hearing.

### A.

■ Under date of May 15, 1970 the respective boards of Iroquois Industries, Inc. and Scotten Dillon Company, both Delaware corporations, approved an agreement providing for the acquisition by Iroquois of all assets of Scotten Dillon in exchange for 450,000 shares of Iroquois common stock. The exchange was related to all outstanding stock of Scotten Dillon and, in effect, involved a 1.5 ratio of Iroquois shares to Scotten Dillon (that is, 450,000 to 300,000). On July 6, 1970 plaintiff, an Iroquois stockholder, filed this action to enjoin the proposed transaction on the ground that it would be a waste of Iroquois assets. Seventeen days after the complaint was filed and before action by the stockholders, the plan was abandoned.

Iroquois argues, and its evidence shows, that Scotten Dillon simply decided to withdraw from the contract as it had a right to do by its terms. Plaintiff contends that the filing of this lawsuit was the essential reason why the acquisition was terminated.

Under the view I take of the case the central question is whether plaintiff had a "meritorious claim". The parties dispute the reason for cancellation of the agreement and while Iroquois may have had some responsibility for it, I cannot base a finding on mere suspicion. The point is that Iroquois' evidence shows that Scotten

Dillon had a right to terminate and did so; and that has not been successfully rebutted. In other words, I am unable to find as a fact that the cancellation was induced by the litigation. However, that is not determinative of plaintiff's right to fees; cancellation, if shown, would be but an additional factor in determining the amount of any fee allowed. Rosenthal v. Burry Biscuit Corporation, Del.Ch., 209 A.2d 459 (1949). See also Mintz v. Bohen, Del.Ch., 210 A.2d 569 (1965) and Judge Steel's opinion in Murray v. Lapides (D.Del.1966, C.A. 4092).

### B.

■ The rules to be applied when compensation is sought in a derivative action were reviewed by the Supreme Court in Chrysler Corporation v. Dann, Del., 223, A.2d 384 (1966). There Chief Justice Wolcott stated that to justify an allowance the action must have had merit at the time it was filed, and plaintiff must have had "some" factual basis for his charges. He then wrote:

"The crux of the matter is the meaning of the term 'meritorious action.' . . . A claim is meritorious within the meaning of the rule if it can withstand a motion to dismiss on the pleadings if, at the same time, the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success. It is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope."

See also Palley v. McDonnell Company, Del.Ch., 295 A.2d 762 (1972).

### C.

Iroquois argues that the complaint is not and cannot be regarded as meritorious because at bottom it is based on a disagreement about the value of the Scotten Dillon assets to be acquired. Relying on 8 Del.C.

§ 152,[1] defendant says that actual fraud has not been shown and hence the statute makes the judgment of the directors conclusive on the valuation issue.

■■ Actual fraud may, of course, be shown directly but it may also be inferred from the attendant circumstances, West v. Sirian Lamp Co., 28 Del.Ch. 398, 44 A.2d 658 (1945); and inadequacy of consideration is a part of such circumstances, Diamond State Brewery v. De La Rigaudiere, 25 Del.Ch. 257, 17 A.2d 313 (1941). However, excessive valuation, standing alone, is not enough unless it is so gross as to lead the Court to conclude that it was due, not to an honest error of judgment but to bad faith or a reckless indifference to the rights of others. Fidanque v. American Maracaibo Co., 33 Del.Ch. 262, 92 A.2d 311 (1952).

■ In applying these rules to this case, I assume that all Iroquois directors, other than Fox, were independent in all necessary aspects. Indeed that is more than an assumption because there is nothing in the record to show that they are not. But the position of Fox is quite different.

Certainly Fox was the central figure in the transaction. He was president and board chairman of Iroquois. He negotiated the terms of the acquisition with Scotten Dillon. He presented the proposal to the Iroquois Board. Compare Fidanque v. American Maracaibo Co., supra. At the time of negotiation and at the time of presentation Fox owned (or at least had a substantial claim to ownership of) $1,500,000 in value of convertible debentures of Scotten Dillon. How much of this he revealed to the Iroquois Board is not clear from the record. But it is clear that he did not disclose to the Board that he had pledged the debentures to secure three bank loans totaling $475,000. I need not determine what inference should be drawn from these facts. I need note only that one inference which may be drawn is that Fox had a significant personal interest in consummation of the transaction which required the fullest disclosure on his part; and it was not made. By the terms of the contract which he negotiated and recommended Iroquois would have asumed, apparently, the obligation to convert his debentures into its stock at the 1.5 to 1 ratio. I need not decide that Fox would have had an enforceable legal right to conversion at that ratio but certainly he would have been in position to strongly argue a right to do so and that is enough for present purposes.

In terms of market price Iroquois would have been required to pay a substantial premium for Scotten Dillon, as shown by the following comparison between market value of 450,000 Iroquois shares and 300,000 Scotten Dillon shares:

| | MARKET PRICE/SHARE | | TOTAL MARKET VALUE | | |
| DATE | IROQUOIS | SCOTTEN DILLON | IROQUOIS | SCOTTEN DILLON | EXCESS |
|---|---|---|---|---|---|
| 5/1/70 | 9⅝ | 8¼ | $ 4,331,250 | $2,475,000 | $1,856,250 |
| 5/6/70 | PURCHASE APPROVED BY THE IROQUOIS BOARD OF DIRECTORS | | | | |
| 5/14/70 | 8¼ | 9⅛ | 3,712,500 | 2,737,500 | 975,000 |
| 7/6/70 | 6¾ | 6⅛ | 3,037,500 | 1,837,500 | 1,200,000 |
| 7/23/70 | 7¾ | 6½ | 3,487,500 | 1,950,000 | 1,537,500 |
| 10/29/71 | 22½ | 9 | 10,125,000 | 2,700,000 | 7,425,000 |
| 10/11/72 | 14⅛ | 8⅞ | 6,356,250 | 2,662,500 | 3,693,750 |

---

1. 8 Del.C. § 152 states in part:

"... In the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases thereof shall be conclusive."

Iroquois argues that the "control" which would accompany its acquisition of all Scotten Dillon assets is a value factor to be weighed. And so it is. And I agree that market price is not necessarily conclusive in these matters, particularly under the statute and because assets, not shares, were to be acquired. But I am unable to find from the record facts which eliminate all reasonable hope of success for plaintiff. Chrysler Corporation v. Dann, supra.

Iroquois argues that in Puma v. Marriott, Del.Ch., 283 A.2d 693 (1971) this Court applied the business judgment test to the decision of independent directors who approved a stock-for-stock transaction. There the case went to final hearing and the Court found that the plaintiff had not shown fraud. And that points up the critical difference between *Puma* and this case: plaintiff is not obliged to prove fraud at this time in this case. Under *Chrysler* his burden is not "absolute assurance" but only "reasonable hope" of ultimate success. *Puma* is not controlling.

We have, then, a situation in which the chief executive of and negotiator for Iroquois (Fox) apparently stood to gain significantly through his investments in the *other* company, if the deal were consummated. And on the face of things, the difference in market value of the respective shares is significant. Under these circumstances I conclude that § 152 does not cut off inquiry as a matter of law. In short, plaintiff has demonstrated a triable issue on fraud under § 152. Given the significant difference in "value" on the respective sides (as shown by the market prices for shares), the key position of Fox in the negotiation and his failure to disclose his special interest, I conclude that plaintiff has shown such reasonable hope of ultimate success that he is entitled to an allowance for compensation.

Defendant argues that plaintiff's failure to make demand upon the Iroquois Board deprived it of a chance to make inquiry and take any corrective action needed; and so it did. But Iroquois' evidence, given by the present chairman of its Board who was a director at the time, shows how futile this would have been. He testified, without explanation, that had a shareholder demand been made upon the Board to abandon the deal, it would not have done so.

#### D.

Having found that an allowance of compensation is appropriate, I must now consider the amount thereof. Plaintiff seeks $75,000 but candidly says that this is based more on the savings to Iroquois than on the time which counsel and the accountants have expended in prosecuting the action.

It is admittedly difficult to establish a precise dollar basis for fixing compensation but that does not mean that the services were without benefit or that compensation may not be allowed. Compare Palley v. McDonnell Company, supra.

Applying the usual standards, Murray v. Lapides, supra, in my judgment a total allowance for all services and expenses of $25,000 is reasonable under all the circumstances.