John G. BARON, Plaintiff,

v.

ALLIED ARTISTS PICTURES CORPORATION, Emanuel L. Wolf, Peter E. Strauss, Carl Prager, Robert L. Ingis, William V. Lurie, Joseph P. Gruenberg, Andrew P. Jaeger, Jack M. Sattinger and Robert J. Sisk, Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted Oct. 3, 1978.
Decided Nov. 28, 1978.

---

4. Other dissenting stockholders may elect to participate in this action pursuant to 8 *Del.C.* § 262(c).

Russell J. Willard and Douglas W. Troll of Hastings & Willard, Wilmington, and Michael R. Newman of Daar & Newman, Los Angeles, Cal., for plaintiff.

Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and Robert J. Sisk and Eugene H. Zagat, Jr., of Hughes, Hubbard & Reed, New York City, for defendants.

ON MOTION FOR ALLOWANCE OF COUNSEL FEES AND EXPENSES.

MOTION GRANTED IN PART.

BROWN, Vice Chancellor.

In these consolidated actions, counsel for the plaintiff have petitioned for an allowance of counsel fees in the sum of $276,800 plus the sum of $5,155.70 for expenses incurred in the prosecution of the matter. The defendants Allied Artists Pictures Corporation ("Allied") and the named individual members of its Board of Directors, oppose the award of any fees and expenses to plaintiff's counsel and ask further that plaintiff be ordered to reimburse Allied for the costs and counsel fees it was forced to expend in defending what it concludes were meritless actions. Allied's position is based on the following factors.

During the course of the litigation the plaintiff, John G. Baron, was the owner of 10 shares of Allied's common stock. The consolidated suits here were brought by him pursuant to 8 Del.C. § 225 to challenge the 1973 and 1974 election of directors to Allied's Board. The basis for the challenge was that Allied's Board of Directors, which was then being elected by the preferred shareholders due to an existing delinquency in the payment of preferred dividends, was wrongfully perpetuating its control of the corporation to the detriment of the common stockholders (1) by not paying the accumulated dividend arrearages on the preferred stock and (2) by failing to comply with sinking fund requirements relating to Allied's preferred stock. Reference is made to Baron v. Allied Artists Pictures Corporation, Del.Ch., 337 A.2d 653 (1975) for the details thereof.

After discovery, briefing and argument, summary judgment was granted in favor of Allied and the other named defendants by means of the above-cited decision. Baron appealed this decision. However, on September 20, 1976 the Supreme Court dismissed the appeal from the bench, noting that the intervening merger of Allied into Allied Artists of Delaware, Inc. had caused the issues on appeal to become moot. This decision was confirmed by subsequent order of September 24, 1976.

In addition to the consolidated actions in this Court various other suits were instituted against Allied by either Baron or his nominee, all of which sought relief similar to that requested here. In 1973 a Court in California denied an injunction sought for the purpose of barring Allied's preferred shareholders from voting at the 1973 shareholders meeting. In 1974 a New York court stayed one action pending the outcome of the first of these consolidated Delaware suits and dismissed a second action brought to declare the 1973 election of a majority of Allied's Board to be unlawful. An action in the Delaware United States District Court was initially stayed and ultimately dis-

missed when Baron failed to file an amended complaint within a deadline to which he had previously agreed. In January 1976 Baron filed an additional action in this Court seeking to enjoin the very merger which ultimately rendered his appeal of these actions moot. That application was also denied. He also complained to the Securities and Exchange Commission about Allied's 1973 proxy statement, but without success. Allied notes that the theme common to all of these lawsuits is that Baron failed to prevail upon any of them.

Allied also points to the fact that Baron did not purchase his 10 shares of stock until the fall of 1973, and thus after he was aware of the pertinent matters relating to the preferred shareholders' control of Allied. This was also after two similar actions had been brought by one Bruce D. Stuart—one of Baron's lawyers—who Baron later admitted was acting on his behalf in so doing. Stuart purchased his shares the day before he verified his complaint in the first action brought by him. At the time Baron was employed as the manager of a Los Angeles movie theatre at a salary of $180 per week. His other means were not substantial. Thus, in addition to contending that Baron's claims fall into the category of a purchased grievance (an argument made by Allied but not decided in these actions in view of the decision made on the merits), Allied doubts that it could have been Baron himself who was financing the "cross-country multicourt litigation" against it.

Petitioners take a different view of the matter. They point out that from 1967 onward control of Allied had rested with the holder of a majority of the preferred stock due to the dividend arrearages. They point out that this majority owner, Kalvex, Inc., had purposefully acquired a majority of the defaulted preferred and had thereafter remained in control, using funds when available to expand business rather than to pay the dividend arrearages which petitioners characterize as "relatively minor." They acknowledge, as they must, the unsuccessful judicial record that they compiled along the way. They contend, however, that this unrelenting pressure was of necessity a factor in bringing about the merger of Allied and Kalvex through Allied Artists of Delaware, Inc., and that as a result of that merger the goal of their litigation efforts was accomplished in that (1) all preferred dividend arrearages were paid, (2) all preferred stock was redeemed (the purpose of the sinking fund), and (3) voting rights were returned to Allied's common stockholders. It is contended that this result justifies an award of counsel fees and reimbursement of their expenses.

Petitioners also point out that while Baron lost the summary judgment issue in this Court on the basis that it had not been established by the record that Allied's management had abused its business judgment under the existing circumstances in failing to liquidate the dividend arrearages, the decision of this Court was nonetheless subject to the following admonition set forth at 337 A.2d 660:

"It is clear, however, that Allied's present board does have a fiduciary duty to see that the preferred dividends are brought up to date as soon as possible in keeping with prudent business management. * * It cannot be permitted indefinitely to plough back all profits in future commitments so as to avoid full satisfaction of the rights of the preferred to their dividends and the otherwise normal right of the common stockholders to elect corporate management."

It was not until after the appeal was taken from the decision embodying this caveat, and after Baron's opening brief had been filed in the Supreme Court, that the proxy statement concerning the proposed merger between Allied and its controlling preferred shareholder, Kalvex, Inc., was sent to Allied's shareholders. Since it was in this setting that the appeal became moot as a result of the merger which accomplished all the relief that Baron was seeking, petitioners take the position that the actions brought in other jurisdictions do not detract from the merits of their fee application here.

Thus, the controlling question presented by the present application is whether plaintiff has established any basis for an award of counsel fees and costs in a situation where action taken by the defendants through the merger process rendered plaintiff's appeal moot after summary judgment already had been granted against him and in favor of the defendants in this Court, particularly in view of the plaintiff's subsequent effort to enjoin the merger, the result of which he now relies upon for an award of fees and costs.

■ Ordinarily in shareholder derivative actions a losing plaintiff must pay his own counsel and bear the burden of his costs. *Gottlieb v. Heyden Chemical Corporation,* Del.Ch., 105 A.2d 461 (1954). However, when such litigation results in a benefit to the corporation or to the members of a class, a successful plaintiff is entitled to an allowance of counsel fees based upon the fund or property or benefit which his efforts have created, and in this regard it is not necessary that the benefit be measured in precise monetary standards. *Chrysler Corporation v. Dann,* Del.Supr., 223 A.2d 384 (1966).

■ Moreover, to be entitled to an award of counsel fees and expenses it is not necessary that the shareholder-plaintiff be successful in the sense that he obtain a favorable judgment in the litigation. Where a case is voluntarily settled prior to a decision on the merits, or where the cause of action is rendered moot by subsequent action of the defendants, a shareholder-plaintiff may, in a proper case, be entitled to such an award. *Chrysler Corporation v. Dann, supra; Palley v. McDonnell Company,* Del. Ch., 295 A.2d 762 (1972), aff'd sub nom, *McDonnell Douglas Corporation v. Palley,* Del.Supr., 310 A.2d 635 (1973); *Rosenthal v. Burry Biscuit Corporation,* Del.Ch., 209 A.2d 459 (1949).

■ To ascertain whether or not a settled or mooted case is a proper one for the award of counsel fees and expenses, a two-pronged test is applied. As stated in *Chrysler Corporation v. Dann* at 223 A.2d 387:

" . . . the rule requires that not only must the action confer some benefit upon the corporation, but, also, that the action, when filed, was meritorious and had a causal connection to the conferred benefit."

Of the two, the existence of any underlying meritorious claim has been indicated to be the central question for consideration. *Chrysler Corporation v. Dann, supra; Lewis v. Scotten Dillon Company,* Del.Ch., 306 A.2d 755 (1973), aff'd sub nom, *Iroquois Industries, Inc. v. Lewis,* Del.Supr., 318 A.2d 134 (1974).

As to what constitutes a meritorious claim in the context of a contested fee application in a settled derivative suit, the Supreme Court was asked in *Chrysler Corporation v. Dann* to define it as "a cause of action which would survive a motion for summary judgment." This was refused, however, the Court formulating the rule as follows at 223 A.2d 387:

"A claim is meritorious within the meaning of the rule if it can withstand a motion to dismiss on the pleadings if, at the same time, the plaintiff possesses knowledge of provable facts which hold out some reasonable likelihood of ultimate success. It is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope."

In *McDonnell Douglas Corporation v. Palley, supra,* the Supreme Court specifically made this rule applicable also to the determination of a meritorious claim in a shareholder action rendered moot by subsequent action of the defendants.

■ As to the second prong of the test, namely, that there must be a causal connection between the benefit conferred and the shareholder-plaintiff's suit, it was held by this Court in *Rosenthal v. Burry Biscuit Corporation, supra,* and also in *Mintz v. Bohen,* Del.Ch., 210 A.2d 569 (1965), that a plaintiff may not be deprived of counsel fees by action taken by one or more of the defendants which has the effect of curing the alleged wrong to the corporation's benefit and rendering the controversy moot, un-

less it be demonstrated that the curing of the defect is in nowise related to the lawsuit. In *Burry Biscuit* it was also established that where the matter is rendered moot by the action of the defendants, they have the burden of showing that the action taken by them was not in any way occasioned by the existence of the lawsuit. This particular aspect of the mootness rule was cited with approval in *Chrysler Corporation v. Dann* and was expressly approved in *McDonnell Douglas Corporation v. Palley, supra,* at 310 A.2d 637, where the Supreme Court stated that

". . . where a stockholder's derivative suit has been rendered moot by subsequent action of the defendant, the latter has the burden of showing no causal connection between the two in order to defeat the stockholder's claim for legal fees and expenses."

Stated conversely, a plaintiff in a shareholder's suit rendered moot by subsequent corporate action is not required in the first instance to affirmatively demonstrate that the corporate action was induced by the prosecution of his suit in order to recover counsel fees and expenses. *Palley v. McDonnell Company, supra.*

■ Thus to justify an award of fees and expenses here, assuming at this point that the plaintiff's action was mooted by the subsequent action of the defendants, it is not sufficient for plaintiff to show merely that the relief sought by his consolidated suits eventually came to pass in that control of the corporate entity was returned to the common shareholders. He is required to demonstrate in addition that his complaints were meritorious when filed in the sense that (a) as alleged they were sufficient to withstand a motion to dismiss on the pleadings and that (b) at the time they were filed he possessed knowledge of provable facts which held out a questionable hope or likelihood that ultimately he would be successful. If this showing is made, then the burden shifts to the defendants to show that the action taken by them which resulted in the altered voting conditions sought by the complaints was in nowise related to or a result of the plaintiff's consolidated actions.

This matter was submitted for decision on the briefs and the pleadings and exhibits of record. It presents indeed a troublesome question. I analyze it in the following manner.

## I.

Initially, defendants take the position that the traditional rule applies to Baron and that he must bear his own counsel fees and expenses for one simple reason—he lost his case. Defendants would limit the aforesaid mootness rules to situations wherein a plaintiff's cause of action becomes moot prior to any decision on the merits. They point out that here the merger occurred only after Baron had lost the case on the merits in this Court. They say that as a consequence only his appeal was mooted by the merger and not his cause of action since the latter had already been lost by means of a judicial determination. They note that petitioners have failed to cite a single case in which the exception for "mooted" shareholder actions have been stretched to cover mootness occurring at the appellate level.

While this latter assertion is true, I must take note of the fact that the defendants have also failed to cite a single case which supports the distinction they seek to establish. For purposes of this case then, I accept this to mean that there are no precedents on the point one way or the other, and accordingly I have not attempted to discover any on my own.

Suffice it to say that in view of Baron's appeal the decision on the merits in this Court was not final as of the time the action was taken by the defendants that rendered further proceedings unnecessary. Since further proceedings in the Supreme Court conceivably could have resulted in a reversal which, in the context of the matter, could have resulted in the entry of summary judgment for Baron, I cannot conclude that he is barred from seeking an award of fees and expenses under the mooted action standards. Accordingly, I turn to an application of these rules and reach the following conclusions based upon the facts as I find them.

## II.

The plaintiff has made a sufficient showing that his consolidated complaints were meritorious when filed—at least within the meaning of the rule previously stated herein. It was alleged that as of the time of the annual meeting for the election of directors in December 1973 Allied owed the sum of $249,000 to the Internal Revenue Service (under an agreement which prohibited Allied from paying dividends until the tax delinquency was satisfied). By the annual meeting in 1974 the balance on this delinquency had been reduced to $29,000. It was further alleged that as of December 1973 the preferred dividend arrearage was some $270,000 and as of December 1974 it was approximately $295,000. It was also alleged that for the years preceding both the 1973 and 1974 annual meetings Allied had the financial ability to pay off both the tax debt and the dividend arrearages in full. This latter allegation was based upon reports, Securities and Exchange Commission filings and information released to the news media, presumably by Allied.

█ The fiscal information relied upon by plaintiff to show that Allied had the financial wherewithal to satisfy the tax obligations and to pay the preferred dividend arrearages and to thereby return voting control to the common shareholders was largely undisputed. The argument was whether Allied was duty bound to use available liquid funds to pay the preferred shareholders or whether it was proper business judgment by the defendant board under the circumstances to utilize available funds for other purposes for the overall benefit of a corporate enterprise that was in the process of extraditing itself from a long stay in the red. The essential facts relied upon by plaintiff, however, were provable and were within his knowledge at the time his suits were filed. As such, when filed, I feel that his suits had some "reasonable hope" of being successful. And while summary judgment was eventually entered against him in this Court, his appeal from that decision unquestionably kept his contentions alive. Moreover, he was not bound to survive the motion for summary judgment in order to later establish that his claims were meritorious when filed. *Chrysler Corporation v. Dann, supra.*

## III.

As to the element of causal connection between plaintiff's suits and the return of voting power in the new corporate entity to its common shareholders as a result of the merger, I find that the defendants have failed to establish that the one was not related to the other.

In arguing that there was no causal connection, the defendants rely on four factors. First they point out that a preliminary plan to merge Allied and Kalvex, Inc. was announced in 1969, long before plaintiff's suits were filed. Second, they assert that prior to plaintiff's suits in this Court, another shareholder had brought actions in the state and federal courts of New York asserting similar claims. Third, it is contended that because of the restriction imposed by the Internal Revenue agreement the preferred arrearages could not be satisfied until the tax delinquency was paid in full, and consequently they say that it was the pay off of this debt, and not plaintiff's suits, which prepared the way for the redemption of the preferred stock and the merger. Finally, defendants point out that the plaintiff and his attorneys, by bringing a subsequent action to attempt to enjoin the merger, actively tried to block the very corporate action for which he now seeks to take credit.

As to the first of these factors, the November 24, 1975 prospectus as to the proposed merger of Allied and Kalvex, Inc. states that the preliminary proposal to merge the two, first made in August 1969, was subsequently abandoned in October 1969. It goes on to state that the 1975 merger proposal "was first actively considered and discussed by the Boards of Directors of Allied and Kalvex in January 1975." This was at a time when the parties were awaiting the decision of this Court on the previously argued summary judgment motions. Accordingly, the argument is not persuasive.

As to the second point, proxy materials disseminated by Allied described the similar federal suit in New York as having been stayed pending the state action. The New York state court action was described as being inactive. In an April 25, 1975 press release announcing that summary judgment had been granted in its favor in these suits, Allied informed the public that "[t]his ruling disposes of *the two principle cases* in a series of small shareholder actions attacking Kalvex's continued control of Allied." (Emphasis added.) This would seem dispositive of this second point.

As to the third contention regarding the prohibition of the Internal Revenue agreement, I fail to see its significance. It was plaintiff's position in his complaints that since, in his view, Allied had the funds to pay off this debt as well as to pay the preferred arrearages, but was not doing it in order to perpetuate the control of Kalvex, then this Court should override the provisions of Allied's certificate of incorporation and order that an annual election be held at which Allied's Board of Directors would be elected by the common shareholders even though the preferred dividends continued to remain in arrears for more than six quarters. Accordingly, it provides no explanation to say that it was Allied's performance of that which plaintiff's suits said it was refusing to perform rather than plaintiff's suits which brought about a return of voting control to the common shareholders.

The final contention is the most troublesome of the four. Close scrutiny, however, would seem to provide a logical answer. On the surface, it does seem inconsistent for the petitioners to be claiming a fee for contributing to benefits flowing to the common shareholders by the merger of Allied and Kalvex in face of the fact that Baron attempted to prevent the merger from taking place. However, when measured in light of our precedents set forth previously herein, the reliance of the defendants on this fact to deny an allowance of fees and costs constitutes an argument which tends to overlook the sequence of events.

In short, defendants are saying that there can be no causal connection between the plaintiff's consolidated suits and the merger of Allied and Kalvex for the simple reason that the plaintiff did not want the merger. Ergo, if he did not want it, the merger could not have been a result of his litigation efforts. However, this does not necessarily follow.

Plaintiff brought his original suits to attempt to have Allied's preferred shareholders (as dominated by Kalvex) divested of voting control and to return the power to elect the board of directors to the common shareholders. While his suits were ongoing at the appellate level, Allied, through its defendant board of directors as controlled by Kalvex, entered into a merger proposal under which all preferred shares of Allied were to be redeemed, all arrearages paid, and voting control of the resultant corporate entity placed in its common shareholders. As and when approved by a majority of the shareholders of the two companies, Kalvex thus relinquished its preferred shareholder control of Allied and return a say in the affairs of the resulting entity to Allied's former common shareholders before Baron's appeal could be heard.

Under our law (it having been concluded herein that the suits were meritorious when filed) the burden is thus cast upon the defendants to establish that this action on their part, which voluntarily divested Kalvex of its preferred shareholder voting control of Allied, was in no way related to the plaintiff's then ongoing litigation which had been brought to accomplish the same thing. To simply rely on the fact that the plaintiff opposed the merger after it was announced is to sidestep this burden rather than to meet it. It leaves unanswered the question of whether the decision by the defendants to enter into the merger on the terms proposed was in any way engendered by the plaintiff's pending litigation. At best, it is not a denial. So viewed, it becomes significant also that no affidavit in opposition to the fee application has been filed by the defendants in which the inference of a causal connection between plaintiff's suits and

the decision to enter into the merger is expressly denied.

■ Accordingly, the defendants having failed to carry their burden on the causal connection issue, it follows that an award of counsel fees and expenses on behalf of the plaintiff's efforts is in order.* I turn then to the most perplexing problem of all—the amount to be allowed.

## IV.

As noted at the outset of this decision, counsel for Baron seek a combined total fee of $276,800 together with out-of-pocket costs in the sum of $5,155.70. The defendants violently oppose any allowance of fees whatsoever. The fee application is based upon the affidavit of California counsel that they have expended some 560 hours on the matter and the affidavit of Delaware counsel that their joint efforts have involved 824 hours. Thus Baron's counsel aver that they have together expended—at a minimum—a total of 1,384 hours in their effort to return voting control of the corporate entity to the common stockholders. Computed at their respective hourly rates, they value their time at $92,700 for Delaware counsel and $47,600 for California counsel, for a total of $140,300. However, based upon various benefits to the corporation and its stockholders which they claim their efforts to have produced, they feel that their services should be valued at the rate of $200 per hour for purposes of this litigation, thus resulting in their total application of $276,800. Counsel further aver that a great deal of time was required on their part in familiarizing themselves with the workings of the motion picture industry, and although California counsel acknowledge that considerable additional ef-

fort on their part went into the various suits filed in other courts, they assert that the product of these efforts ultimately spilled over and into the litigation in this Court, thus bringing about an eventual successful result.

■ It provides no pleasure to be placed in a position wherein an award of counsel fees will not fully compensate counsel for time actually spent. In fact, the case of *Husband S. v. Wife S.*, Del.Supr., 294 A.2d 89 (1972) holds that actual time expended by an attorney at a prevailing hourly rate cannot be arbitrarily discounted by a Court in arriving at an award of counsel fees. Translated, this seems to imply that an unchallenged affidavit of counsel as to hours spent on a case must be accepted at face value. At the same time, the amount of an allowance for counsel fees, particularly in a corporate derivative action,** is a matter left to the discretion of the Court, *Krinsky v. Helfand*, Del.Supr., 156 A.2d 90 (1959), and in the recent unreported decision of *Lewis, et al. v. Great Western United Corporation, et al.*, (C.A. 5397—March 28, 1978) I have taken the position, at least from my person viewpoint, that under current Delaware law the number of hours spent in a derivative suit is not the controlling element on which an allowance of fees is to be based. Accordingly, I do not feel bound in any way by the affidavits of counsel here. Rather, I conclude that I must look to the nature of the action, the work accomplished, and the result achieved as well as to the time expended in arriving at what would appear to be a reasonable fee for the effort. Moreover, I do not feel constrained to include the efforts of counsel in other jurisdictions in view of the fact that they were uniformly unsuccessful.

---

* I note here without further comment that the petition for fees and expenses has not been filed on behalf of the plaintiff Baron. Rather his counsel have petitioned directly for such an award in their own right. Defendants have not challenged the propriety of this and consequently my decision herein should not be taken as passing upon it one way or the other.

** Baron did not in name file his consolidated suits as derivative actions on behalf of the corporation. Rather he sued as a stockholder to challenge the election of directors under 8 *Del.C.* §§ 225 and 227. Defendants do not rely on this in any way to defeat the present petition of his counsel, except to belatedly cite the case of *Burley Tobacco Co. v. Vest*, Ky.App., 178 S.W. 1102 (1915) which I do not find persuasive.

384

In conclusion then, Baron here filed two suits to challenge the manner of electing directors for Allied. These were consolidated into one action for the purpose of cross-motions for summary judgment. Baron lost that battle but won an admonition that if Allied's fortunes continued at their then-existing pace, the defendants would do well to liquidate the outstanding arrearages so as to return voting control to the common shareholders. Baron appealed and prepared the matter for argument before the Supreme Court. Before argument could be held, however, action by the defendants rendered the matter moot under circumstances which I have found sufficient herein to justify an award of counsel fees and costs. The various monetary benefits allegedly flowing to the stockholders of the corporate entity surviving the merger, while perhaps incidental to and resulting from the action taken by the defendants in mooting the matter, were not benefits sought by Baron according to the complaints that he filed. Therefore, I find no basis to consider them in awarding a fee to his counsel.

Having truly considered the matter in detail, and obviously at some length, I conclude that an award of counsel fees in the sum of $50,000 together with a reimbursement of $5,155.70 for out-of-pocket expenses is fair and reasonable to both sides under all of the circumstances. Compare *Saks v. Gamble,* Del.Ch., 154 A.2d 767 (1958). This award also takes into consideration the efforts required of counsel for Baron in presenting the present application.

## V.

As to the remaining matters, the record indicates that Baron was the owner of stock warrants in Allied at the time that the initial action was filed in the name of his attorney in California. Thus he at least had some preexisting interest in Allied prior to the initiation of any legal action on his behalf. More importantly, Baron was clearly a stockholder of record of Allied well before either Delaware action was filed. The facts upon which he brought his action were not locked-in prior to the time he acquired his stock. Between the time of his acquisition of his ten shares and the date of the 1973 annual meeting, it was conceivable, or at least possible, that Allied's management could have liquidated the preferred dividend arrearage, in which event Baron would have had no basis for his complaint. Since it has been found herein that his Delaware actions were meritorious within the meaning of the mootness rules, I cannot accept the defendant's contentions that his grievance was a "purchased" one which should thus deprive his counsel of an allowance for fees and expenses. The fact that his actions have been found to have been sufficiently meritorious to justify an award of counsel fees also disposes of Allied's cross-petition to have its litigation expenses assessed against Baron. That claim is denied.

Order on notice.