**Ernest S. JOHNSTON, Woodrow R. Praught, and John G. Baron, on behalf of themselves and all others similarly situated, Plaintiffs Below, Appellants,**

v.

**Emanuel L. WOLF, Jay N. Feldman, Joseph J. Gruenberg, Andrew P. Jaeger, William V. Lurie, Carl Prager, Jack M. Sattinger, Robert J. Sisk, and Peter E. Strauss, Defendants Below, Appellees.**

Supreme Court of Delaware.
Submitted on Reargument: Nov. 1, 1984.
Decided: Jan. 2, 1985.

Wayne J. Carey, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Michael R. Newman and Amelia L. Taylor (argued), of Miller & Daar, Beverly Hills, Cal., David M. Olasov, of Edwards & Angell, New York City, for appellants.

Stephen P. Lamb (argued) and Stephen E. Jenkins, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for appellees.

Before HERRMANN, C.J., McNEILLY and CHRISTIE, JJ.

CHRISTIE, Justice:

This is an appeal from a decision of the Court of Chancery which granted summary judgment to the defendants-appellees. The complaint was brought as a class action under 8 *Del.C.* § 174.[1] The plaintiff class consists of those persons who claim to be

---

1. 8 *Del.C.* § 174. Liability of directors for unlawful payment of dividend or unlawful stock purchase or redemption; exoneration from liability; contribution among directors; subrogation.

(a) In case of any wilful or negligent violation of the provisions of § 160 or 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within 6 years after paying such unlawful dividend or after such unlawful stock purchase or redemption, to the corporation, and to its creditors in the event of its dissolution or insolvency, to the full amount of the dividend unlawfully paid, or to the full amount unlawfully paid for the purchase or redemption of the corporation's stock, with interest from the time such liability accrued. Any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself from such liability by causing his

dissent to be entered on the books containing the minutes of the proceedings of the directors at the time the same was done, or immediately after he has notice of the same.

(b) Any director against whom a claim is successfully asserted under this section shall be entitled to contribution from the other directors who voted for or concurred in the unlawful dividend, stock purchase or stock redemption.

(c) Any director against whom a claim is successfully asserted under this section shall be entitled, to the extent of the amount paid by him as a result of such claim, to be subrogated to the rights of the corporation against stockholders who received the dividend on, or assets for the sale or redemption of, their stock with knowledge of facts indicating that such dividend, stock purchase or redemption was unlawful under this chapter, in proportion to the amounts received by such stockholders respectively.

either the creditors of Allied Artists Pictures Corporation (Allied or pre-merger Allied), a Delaware corporation which no longer exists, or of Allied's successor corporation of the same name (New Allied), also incorporated under the laws of this State. Named as defendants are Allied's former directors. Plaintiffs seek to collect money which they claim they are owed by one of the corporations from the directors of pre-merger Allied. It is alleged that the former directors are liable because they approved pre-merger Allied's redemption of all its outstanding preferred stock on January 19, 1976, as part of an overall plan of reorganization among Allied and certain affiliated corporations, whereby Allied ceased to exist and New Allied came into existence as a result of the merger.

In mid-1975 Allied entered into a complex agreement and plan of reorganization which provided, among other things, that Allied was to be merged into a corporation known as Allied Artists of Delaware, Inc. This new corporation, in turn, changed its name after the merger to Allied Artists Pictures Corporation (New Allied).

As part of the reorganization plan, Allied redeemed all of its preferred stock prior to the merger which took place on January 19–20, 1976. Under the merger agreement, and also by operation of law, 8 *Del.C.* § 259(a), the creditors of pre-merger Allied became creditors of New Allied. New Allied continued business operations until April 4, 1979, when it filed a petition under Chapter XI of the Bankruptcy Act.

In their complaint, plaintiffs alleged that the redemption of preferred stock was accomplished in violation of 8 *Del.C.* § 160 which sets forth a corporation's rights and duties with respect to redemption of its own stock. Plaintiffs contend that this situation gives them the right, as corporate creditors, to look to the erring directors for payment of their claims under 8 *Del.C.* § 174. Appellants further claim that because New Allied is insolvent, they as creditors of New Allied (and on behalf of a class of such creditors) have the right to

proceed under 8 *Del.C.* § 174 against the former directors of pre-merger Allied to recover the full amount of a deposit of corporate funds which was made in connection with the redemption of Allied's preferred stock prior to the merger.

The appellees moved to dismiss the complaint or in the alternative, for summary judgment. The grounds asserted in support of the motion were: (1) as creditors of New Allied (and not of pre-merger Allied), appellants lacked standing to maintain any action under 8 *Del.C.* § 174 against the directors of pre-merger Allied; and (2) the preferred stock redemption was, in any case, accomplished in accordance with the requirements of 8 *Del.C.* § 160 and other applicable sections of the Delaware General Corporate Law and so the former directors have no liability to anyone in connection therewith. There was no dispute as to the material facts pertinent to the issues on which the Court of Chancery based its decision.

The Court of Chancery granted summary judgment in favor of the appellees, holding that the provisions of 8 *Del.C.* § 174 may be invoked only by pre-merger creditors, and that post-merger creditors have no standing to invoke that statute. Since the Court of Chancery had entered summary judgment against appellants on the basis that plaintiffs had no standing to sue, it did not reach any of the other arguments presented.

Relying upon *In Re International Radiator, Co.,* Del.Ch. 92 A. 255 (1914), the Court of Chancery found that statutes (which correspond to current § 174) protecting the integrity of a corporation's stated capital aim at "... protecting those who have extended credit to a corporation ... [and] who have relied on stated capital ... 'as a trust fund for the security of creditors ....'" The court concluded:

The purpose of section 174, as this Court views the matter, is to provide a cause of action to creditors who have extended credit to a corporation based on that corporation's stated capital. And when the

corporation impairs that capital by an illegal redemption of stock, it depletes the creditors' "trust fund" and seriously jeopardizes their means to recover their debts. ° * * Under these circumstances, the Court concludes that the words "its creditors" in section 174 is meant to apply to creditors of pre-merger Allied; that is, the corporation that allegedly illegally impaired its capital. *Ernest S. Johnston, et al. v. Emanual L. Wolfe, et al.*, Del.Ch., Civ. No. 6682, Longobardi, V.C. (February 24, 1983).

The court found that plaintiffs Johnston and Praught were creditors of post-merger New Allied only, and for that reason the court granted summary judgment to the defendants as to these two plaintiffs.

The entry of summary judgment against plaintiff Baron turned on the Chancery Court's conclusion that the prior judgment on which Baron relied was for attorney's fees and costs and such judgment ran in favor of Baron's lawyers and not Baron. *See Baron v. Allied Artists Pictures Corp.*, Del.Ch., 395 A.2d 375 (1978), *aff'd*, Del.Supr., 413 A.2d 876 (1980). Baron attempted to reopen that prior litigation four years later by filing a motion asking the Court of Chancery to "clarify" its order so as to give Baron standing as a judgment creditor of pre-merger Allied (and, therefore, standing in this new action against the former directors), but no change in the prior order was made. Thus, as of the time this case was decided by Vice Chancellor Longobardi in the Court of Chancery on February 24, 1983, Baron had failed to establish that he had ever been a creditor of pre-merger Allied.

After Vice Chancellor Longobardi announced his decision against Baron in this case, Chancellor Brown again took up the matter of Baron's standing as a creditor of pre-merger Allied. He did this because Baron had again sought reargument in the prior litigation which Chancellor Brown had handled in 1976. By a letter order dated May 2, 1983 Chancellor Brown again refused to alter the judgment earlier entered. However, Baron filed additional evidence and by order dated October 6, 1983 Chancellor Brown:

(1) Indicated that he had considered a newly discovered affidavit which had been found in old files stored in the house of a now deceased attorney, and that the affidavit shed new light on the situation;

(2) Implied that if this evidence had been before him earlier, and he had been asked to enter judgment in favor of Baron instead of Baron's lawyers, he would have done so;

(3) Observed that there was no reason to enter such an order at this late date since it was unnecessary in the case before him, and such an order's significance would be confined to the case (this case) then pending in the Delaware Supreme Court;

(4) Observed that the facts of the matter are available to be argued in this Court;

(5) Declined to take any action based on the newly discovered evidence.

In view of this situation we have considered the facts of the matter as they are revealed in the court file of the prior case in the Court of Chancery. That case was a suit filed on February 20, 1974 by Baron against pre-merger Allied and its directors. The Court of Chancery rendered an opinion which included a judgment for fees and expenses in favor of Baron's lawyers on November 28, 1978. *See Baron v. Allied Artists Pictures Corp.*, Del.Ch., 395 A.2d 375 (1978). It is that judgment upon which Chancellor Brown commented in his letter of October 6, 1983 referred to above, and it is on that judgment Baron now relies to establish that he was a creditor of pre-merger Allied.

■ Since the merger took place on February 19 and 20, 1976 and the judgment against pre-merger Allied was not rendered until November 28, 1978, those obtaining that judgment cannot be said to be creditors of pre-merger Allied at the time the

merger took place, even though such judgment was later entered against pre-merger Allied (then out of existence for most purposes).

On appeal we find that the Court of Chancery correctly granted defendant's motion for summary judgment based on plaintiff's lack of standing and we affirm. However, our conclusion that Baron lacked standing is based on reasons different from those relied on by the trial court.

The statute here in question, 8 *Del.C.* § 174, provides in essence that directors who are guilty of "wilful or negligent violation" of the statutes governing the purchase or redemption by the corporation of its own stock or of the issuance of dividends on its own stock (8 *Del.C.* §§ 160, 173), "shall be jointly and severally liable at any time within 6 years after paying such *unlawful* dividend or after such *unlawful* stock purchase or redemption, to the *corporation and to its creditors* in the event of its dissolution or redemption ..." (emphasis added).

The plaintiffs assert the claim that the directors of Allied wrongfully impaired the capital of that corporation when they made a deposit of pre-merger Allied's funds ($408,706) in trust, for the purchase of Allied's preferred stock held by a corporation which was about to merge with Allied to form New Allied. When the merger was completed the funds were returned to the treasury of New Allied since New Allied then included and controlled the assets of the merged corporation. The funds were in trust for about 12 hours and were never dissipated or improperly diverted in any way.

Since no plaintiff was a creditor of pre-merger Allied when the merger took place, no plaintiff extended any credit to pre-merger Allied on the basis of that corporation's stated capital. Plaintiffs Johnson and Praught are creditors of New Allied on account of certain trade indebtedness incurred in 1978 and 1979, after the reorganization. Neither of these plaintiffs even claims to have been a creditor of pre-merg-

er Allied at any time. If they relied on the corporate structure of New Allied in extending credit to New Allied, such reliance had to have been based on the corporate structure of New Allied as it existed at the time the credit was extended.

■ Johnson and Praught, as creditors of New Allied, are deemed not to be "creditors" of pre-merger Allied within the meaning of 8 *Del.C.* § 174 because, in fact, they did not have a claim against pre-merger Allied when it went out of existence. When the statute seeks to protect "its creditors" such phrase refers to those creditors who were already creditors at the time of the action challenged under the statute; that is, in this case, to creditors of pre-merger Allied.

The Court of Chancery originally found that Baron's claim of standing which would entitle him to sue the directors of the former corporation was invalid because Baron was not a creditor of pre-merger Allied or of New Allied. We take notice of the fact that Baron was instrumental in obtaining a judgment against pre-merger Allied after the merger and that such judgment could have been obtained in Baron's own name (although it was not). We hold that Baron nevertheless lacks standing since the judgment on which he relies was not obtained until after the merger.

In view of the importance attached to the prior litigation, we here note some additional history of that litigation. Approximately one year after the mergers became effective, Baron's attorneys petitioned the Court of Chancery for fees and expenses which had been incurred in litigation conducted in 1976 against pre-merger Allied. The attorneys claimed that the litigation they conducted in 1976 had been the cause of Allied's merger. They filed affidavits in support of their petition setting forth the costs incurred and the hours spent in connection with that litigation. Included was a claim for expenses in the amount of $5,155.70 and a claim for attorneys' fees of $276,800. The Court of Chancery awarded the attor-

neys their expenses of $5,155.70 and attorneys' fees in the amount of $50,000. In connection with that award, the Vice Chancellor found that the merger had been prompted by the litigation and that the merger had accomplished Baron's goal of having all preferred stock dividend arrearages paid up and the stock redeemed. *Baron v. Allied Artists Pictures Corp.*, Del.Ch., 395 A.2d at 378. It is this merger which Baron was found to have helped bring about for which his attorneys were granted expenses and fees. He now seeks to penalize the former directors for the way that merger was carried out.

In any event, the award of fees and costs was made by then Vice Chancellor Brown, directly to Baron's attorneys and not to Baron. The Court of Chancery then stated:

I note here without further comment that the petition for fees and expenses had not been filed on behalf of the plaintiff Baron. Rather his counsel have petitioned directly for such an award in their own right. Defendants have not challenged the propriety of this and consequently my decision herein should not be taken as passing upon it one way or the other, *Baron v. Allied Artists Pictures Corp.*, Del.Ch., 395 A.2d at 383 n.1.

As indicated earlier, Baron's subsequent attempts to be recognized as the judgment creditor finally met with a measure of partial success on February 23, 1983, but this did not make him a pre-merger judgment creditor of Allied.

We are of the opinion that Baron had no standing to bring this action under 8 *Del.C.* § 174(a), but we base this decision on the fact that he was not a creditor of pre-merger Allied as of the date of the merger (even though at a later date after the merger he probably could have gotten a judgment against the corporation).

We hold that the Court of Chancery was correct when it determined that none of the plaintiffs are entitled to invoke the rights which the creditors of pre-merger Allied would have had under § 174, because none of the plaintiffs was a creditor of pre-merger Allied when the merger took place. Only the theory upon which Baron's disqualification is based differs from that announced by the Court of Chancery.

We do not reach other issues in the case.

\* \* \* \* \* \*

AFFIRMED.