ELIAS AUERBACH,
Appellant, Plaintiff Below,

C. PERRY KING,
Appellant, Plaintiff-Intervenor Below,

*vs.*

CITIES SERVICE COMPANY, and ARKANSAS FUEL OIL CORPORATION,
Appellees, Defendants Below.

*Supreme Court on Appeal, October 11, 1957.*

SOUTHERLAND, *C.J.,* and WOLCOTT and BRAMHALL, *JJ.,* sitting.

*Russell J. Willard, Jr.,* of Hastings, Lynch & Taylor, and *Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, and *Percival E. Jackson* and *Theodore N. Tarlau,* New York City, for appellants.

*Caleb S. Layton* and *Henry M. Canby,* of Richards, Layton & Finger, Wilmington, and *Joseph L. Weiner, Eugene R. Sullivan,* and *Everett W. Young,* New York City, for appellant Cities Service Co.

*Howard L. Williams,* of Morris, James, Hitchens & Williams, Wilmington, and *H. C. Walker, Jr.,* of Blanchard, Goldstein, Walker & O'Quin, Shreveport, La., for appellee Arkansas Fuel Oil Corp.

SOUTHERLAND, Chief Justice: This is a minority stockholder's derivative suit against Cities Service Company (herein "Cities") on behalf of Arkansas Fuel Oil Corporation (herein "Arkansas"), formerly Arkansas Natural Gas Corporation, a subsidiary of Cities. The suit seeks an accounting for wrongs or irregularities alleged to have occurred in the performance by Cities of a contract executed in 1945 between Cities and Arkansas.

One of the defenses to the action is a contention that all claims against Cities under that contract were adjudicated and settled as a part of a plan of reorganization of Arkansas under the *Public Utility Holding Company Act,* 15 *U.S.C.A.* § 79 *et seq.,* approved by the Securities and Exchange Commission on October 1, 1952. The Vice Chancellor sustained this defense and granted Cities' motion for summary judgment. The stockholders appeal.

The pertinent facts are these:

Prior to the execution of the 1945 contract, Arkansas operated an oil refinery at Bossier City, Louisiana. In 1945 this plant, which was obsolete, was shut down, and thereafter Arkansas has bought its refined products from Cities at market value. This is done under the contract of September 20, 1945, which is still in effect. The contract provides that payments by Arkansas are to be subject to monthly credits or adjustments. These credits are intended to reflect the profit that Arkansas would have made had it modernized its Bossier City plant and continued to operate its own refinery. Such monthly accountings reflecting such credits have been made. It is now asserted that the computations in these accountings are erroneous or improper in several respects, and that Cities Service should account to Arkansas in respect thereof. It is these claims that Cities contends were settled by the 1952 plan of reorganization of Arkansas.

In 1944 the Securities and Exchange Commission had required Cities and Arkansas to elect between staying in the oil business or in the utility business. The former was chosen. On February 9, 1949, the Commission instituted an 11(b) proceeding under the Public Utility Holding Company Act "to determine the relevant facts as to the organization and history of Arkansas Natural and the relation of Cities thereto", etc.

On January 25, 1950, before hearings were held, Arkansas filed a reorganization plan under § 11(e) of the act. On January 31, 1951, the Commission entered an order consolidating the two proceedings and ordering a public hearing. The order set forth that certain specified matters (without limiting the scope of the hearings to such matters) were to be presented for consideration, including—

"4. Whether facts or circumstances exist which would support the assertion by Arkansas-Natural of claims against Cities or against any other stockholder or group of stockholders of Arkansas-Natural."

Of this order all security holders of Arkansas were given notice.

Hearings were held. The intervening plaintiff in this case and his counsel participated.

On December 3, 1951, Arkansas and Cities filed an amended plan of reorganization. In this plan Cities proposed to settle intercompany claims against it by the payment of about $4,000,000 to the stockholders of Arkansas (excluding Cities Service and certain other stockholders). After further hearings, the plan was approved by the Commission on October 1, 1952, and by the United States District Court for the District of Delaware on January 29, 1953, and was thereafter consummated.

The issue between the parties is this: Were the claims arising out of the monthly accounting under the 1945 contract between Cities Service and Arkansas settled and discharged as a part of this reorganization plan?

The offer of Cities to settle claims against it is (omitting unessential language) as follows:

"* * * issues have been raised and claims have been or may be asserted against Cities and its subsidiaries with respect to various transactions, including the following: "* * * the conduct or management of Ark-Nat or its subsidiaries or its or their predecessors; * * * and various other financial and other transactions and corporate relationships between Cities and certain of its subsidiaries and Ark-Nat, its stockholders and its subsidiaries.

"Cities * * * proposes as a means of effectuating a settlement and complete discharge of all such claims, to make the payments hereinafter mentioned. * * * It is the purpose and intent of such compromise and settlement that all claims against Cities and any of its present or former subsidiaries or affiliates on the part of Ark-Nat and its subsidiaries or on the part of stockholders of Ark-Nat or their predecessors, whether in their individual or in a derivative capacity, related to, arising out of, or involving any of the transactions and matters above mentioned shall be completely compromised, settled and discharged."

The broad language of the concluding clause of the first paragraph of this offer, and the reference to claims that "have been or

may be asserted" against Cities suggest that it was the intention of Cities to effect a settlement of any and all inter-company claims that might be asserted against Cities, *i.e.,* that were "assertable" by any stockholder. Judge Maris, in his opinion on the plan, so described the settlement. In re *Arkansas Natural Gas Corp., D.C.,* 109 *F.Supp.* 522. It would be entirely natural and proper for a parent company, confronted with claims of overreaching in a reorganization of a subsidiary, to offer to compromise not only such inter-company claims as might actually be pressed, but that could be pressed. Cities sought, we think, to buy its peace in respect of all possible inter-company claims comprehended within the terms of its offer. The reference to "other financial and other transactions between Cities * * * and Ark-Nat" is certainly broad enough to include the claims here in suit, to the extent that they could have been asserted prior to the reorganization. This conclusion is supported by the language of the concluding sentence above quoted. The brief filed by Cities with the Commission put this construction on its offer. The brief asserted:

> "Such payments by Cities are to be made in complete compromise and settlement of all claims asserted or which might be asserted in the proceedings against Cities, whether derivative, class, or individual claims."

It also appears that evidence was taken concerning the closing of the Bossier City refinery and the background of the 1945 contract. The contract was put in evidence, together with six of the monthly accountings. All this evidence was before the Commission and available to all stockholders. The claim now made, in so far as it relates to accountings rendered before the approval of the plan, was plainly one assertable against Cities. The plaintiffs here participated in the proceedings before the Commission, and made or had made a thorough examination of all exhibits, and in addition visited Arkansas' office to examine its records. The brief of Arkansas filed with the Commission specifically referred to the accountings under the 1945 contract. But when the plaintiffs filed their briefs they chose not to assert any claim with respect to these accountings. The Commission, in its opinion approving the plan, discussed and evalu-

ated, for the purpose of considering the over-all fairness of the settlement, a number of specific claims asserted against Cities. But it did not specifically mention these claims.

Plaintiffs contend that because they did not actually "assert" the claims in briefs or argument, and because the Commission did not discuss them, the claims were never settled and discharged. We do not agree. We do not know why plaintiffs did not assert them. Possibly they overlooked them; possibly they then thought the claims of little substance; possibly they had some other reason. The reason does not matter. The claims were plainly within the scope of the issues presented by paragraph 4 of the Commission's list of matters for consideration in its order of January 31, 1951, and were necessarily included in the terms of Cities' offer to settle. Hence they were necessarily discharged by the Commission's approval of the settlement.

Plaintiff's contention comes to this: that when a parent corporation, as a part of a plan of reorganization of a subsidiary, offers to settle all claims against it arising out of inter-company financial dealings, counsel for the objecting stockholders may, by declining or neglecting to discuss certain possible claims in his brief, limit the scope of the parent's offer and thus narrow the effect of the settlement. With this we cannot agree.

Plaintiffs do not appear to question the well-settled rule that a reorganization decree such as the one here involved is immune from collateral attack and is binding on all security holders of the reorganized corporation. *Nichols v. Alker, 2 Cir., 231 F.2d 68.* Nor do they appear to deny that the claims here in suit were (at least to a limited extent) within the scope of the issues framed by the Commission's order of January 1, 1951. They simply say that they, the stockholders, did not press the claims before the Commission. Since the claims were within the issues, an observation of the Commission with respect to the effect of its orders in reorganization cases is pertinent. In *Federal Water and Gas Corporation, etc., 32 S.E.C.* 67, the Commission said:

"* * * We are of the view that broadly speaking, the objectives of the Act require that our orders be treated as final determinations of all issues embraced in the proceedings leading to their issuance."

It seems clear to us that, as above stated, the claims in suit here, to the extent that they arose prior to reorganization, were within the issues framed in the proceedings, and were included in Cities' offer to settle claims.

We are of opinion, so far as concerns the claims under the 1945 contract assertable at the time of the reorganization, that the Vice Chancellor was right in holding that they were put to rest by the Commission's approval of the plan.

But we think that the Vice Chancellor's holding went too far. His opinion, and his order granting summary judgment, appear to rest upon a holding that *all* claims arising out of the accountings under the 1945 contract, past and future, were necessarily extinguished by the settlement. But this is plainly incorrect. The contract is a continuing one. It is still in force. The complaint alleges that there have been unreasonably high charges against Arkansas in the accountings, extending beyond the time of the approval of the plan. The plaintiffs also assert that the accountings differ from month to month and that they were rendered under changed conditions. One or two instances of such alleged changed conditions are asserted in their brief. And the Commission, in the subsequent proceeding brought by Cities (referred to *infra,* 134 *A.2d* 851) described the contract arrangement for a "hypothetical refinery" as "static and not dynamic as would be the case if there were actual operations". Certainly, the settlement did not cover any claim arising out of changed conditions. Such a claim could not have been asserted in the reorganization. Indeed, with respect to such claims, we do not understand Cities to contend that they were discharged. At all events, it is clear to us that they were not discharged.

Cities contends, however, that its methods of accounting under the 1945 contract were impliedly approved by the Commission; that the Commission, being under a duty to exercise an informed and

independent judgment in passing upon the terms of settlement, necessarily found as a fact that the accounting methods were fair and reasonable; and that in so far as the subsequent accountings have followed the methods used prior to the Commission's approval any claim by Arkansas is barred under the doctrine of collateral estoppel. In brief, Cities says that the assertion of any claim of this kind, arising since reorganization, is nothing but a reassertion of a claim previously litigated in the reorganization proceedings and determined adversely to plaintiffs.

The rule of collateral estoppel by judgment, as distinct from *res judicata*, is well recognized in Delaware. *Lewis v. Hanson, supra p.* 235, 128 *A.2d* 819. The rule applies, however, only when the fact sought to be established in the second proceeding has been actually litigated and determined in the first proceeding. Restatement of the Law of Judgments, § 68; *Petrucci v. Landon, 9 Terry* 491, 48 *Del.* 491, 107 *A.2d* 236. Thus, in the *Petrucci* case, a default judgment in a suit before a Justice of the Peace for property damage arising out of an automobile collision was held to create no estoppel in a subsequent suit in the Superior Court for personal injuries.

The situation here is analogous. We fail to find any record of an actual adjudication by the Commission of the fairness of the method adopted by Cities in computing the monthly credits or adjustments under the 1945 contract. The point was neither considered nor adjudicated. Indeed, it may be doubted whether the evaluation of the Commission, or of a court, of the probable merits of a claim in reorganization, in order to determine the over-all fairness of a settlement, is an adjudication of the merits of the claim. The issue adjudicated is the fairness of the settlement considered as a whole. The monetary claim is discharged; but ordinarily its merits are not conclusively determined. In this case the Commission, quoting from a prior opinion, said: "We are not called upon to adjudicate the merits of or to assign a monetary value to each particular claim." Of course, if the Commission had actually weighed the merits of the claims here in suit, pro and con, and had found as a fact that the accounting methods were fair, the doctrine of collateral estoppel

might well apply, to the extent that subsequent accountings reflected such methods. But the contrary is the fact. In a subsequent proceeding Cities sought an exemption under the Holding Company Act. Because of the existence of a minority public interest in the stock of Arkansas the Commission denied the application. In its opinion it states that the monthly statements reflect errors, and that the operation of the contract necessarily involves a conflict of interest between Cities and Arkansas. *H.C.A.Rel.* No. 13254 of August 31, 1956. We cannot believe that the Commission intended by its order approving the plan to bestow a blanket approval on Cities' methods of accounting under the 1945 contract.

It follows that the plaintiffs are entitled to go to trial with respect to claims arising after the settlement, and that the order granting summary judgment must be reversed.

There remains for consideration the determination of the effective date as of which the Commission's approval of the plan became effective, and existing claims were barred. The Commission's order of October 1, 1952, declares that it shall not be operative to authorize the consummation of the transactions proposed by the plan until the appropriate court shall enter an enforcing order.

Is the "cut-off date" as of which certain of the claims in suit are barred the date of the Commission's approval of the plan, or the date of the District Court's approval, or some other date? The point is not developed in the briefs. Counsel are therefore requested to file with the Court, within ten days from the filing of this opinion, supplemental memoranda on the point. The Court will then file a short supplemental opinion and until such opinion shall have been filed the period within which petitions for reargument may be filed will be suspended.