**NEOPLAN USA CORPORATION, a Colorado corporation, and William D. Bubb, Plaintiffs,**

v.

**Robert, J. TAYLOR, Arthur N. Gaudet, Walter H. Daggett, Joseph J. Strusowski, Donald F. Neizer, Sanford L. Wohlman, John B. Wallace, General Motors Corporation, a Delaware corporation, Delaware Administration for Regional Transit, a Delaware corporation, and Kermit H. Justice, Secretary of Transportation, State of Delaware, Defendants.**

Civ. A. No. 84–09 LON.

United States District Court,
D. Delaware.

March 26, 1985.

Jay Stuart Radetsky, Denver, Colo., for plaintiffs; Mary C. Boudart, of Doroshow & Pasquale, Wilmington, Del., of counsel.

Jerome O. Herlihy, of Herlihy, Herlihy & Harker, Wilmington, Del., for individual defendants, DART and State of Delaware.

Charles E. Fairfax, III, of General Motors Corp., Detroit, Mich., for defendant, General Motors Corp.; Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, Del., of counsel.

## OPINION

LONGOBARDI, District Judge.

Defendants in this action, General Motors Corporation ("GMC"), Delaware Administration for Regional Transit ("DART") and the eight individual Defendants have moved to dismiss Plaintiffs', Neoplan USA Corporation ("Neoplan") and

William D. Bubb ("Bubb"), claims under 42 U.S.C. § 1983, 49 U.S.C. § 1601 and state contract law. The Defendants argue that Plaintiffs' claims are barred by *res judicata*, collateral estoppel, official immunity and the eleventh amendment.

Since the motion to dismiss is accompanied by supplementary factual affidavits, the Court will treat the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

In a motion for summary judgment, the moving party has the burden of showing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. In the present case, the Defendants have made such a showing and their motion for summary judgment is granted.

The Plaintiffs allege that their procedural due process rights under the fifth and fourteenth amendments were violated by the bidding procedures utilized by Defendants in awarding GMC a contract to manufacture buses for the State of Delaware. In addition, the Plaintiffs claim that Defendants' actions violated 29 *Del.C.* § 6901 and 49 U.S.C. § 1601 and that Defendant GMC wrongfully interfered with prospective contractual relations between DART and Neoplan.

The controversy began when DART obtained funds to buy fifty-five (55) new buses to replace the old buses in its fleet. Invitations for public bidding were issued in September, 1982, and DART received three bids: one from Neoplan, one from GMC and one from Grumman Flexible.

Because funds for the buses were provided by the federal government, the bidding process was controlled by federal law under the Urban Mass Transportation Act, 49 U.S.C. § 1601, *et seq.* The Urban Mass

Transportation Administration ("UMTA") required that the bidding be conducted in a two step process. Rather than base the award of the contract simply on the lowest cost per bus, UMTA required prospective bidders to submit information as to the projected "life cycle cost" of operating the buses. Thus, prospective bidders were required to submit both a "technical proposal" and a "price proposal." [1]

Each proposal was to be submitted separately with the technical proposal to be considered first. In an attempt to standardize the bids, the committee would then make necessary adjustments in the costs submitted, open the price proposal and, through a comparison of the price proposal to the adjusted technical proposal, determine the successful bidder. Then, the proposal of the successful bidder would be reviewed by DART to determine responsiveness to the bid specifications.

Initially, Neoplan was found to be the successful bidder and the committee began its final review to determine Neoplan's responsiveness to the bid specifications. There is some dispute between the parties as to the events that occurred at this next stage of the process. After announcing Neoplan as the apparent low bidder, the Defendants claim that the committee issued an invitation to the bidders suggesting they were willing to further explain the procedure that was utilized in reaching their conclusions. According to the Defendants, GMC was the only bidder to accept the invitation which resulted in two meetings between GMC and the committee. On the other hand, the Plaintiffs deny that they were invited to meet with DART at that time and claim that GMC engaged in the private negotiations in an *ex parte* attempt to persuade the committee that Neoplan's bid was nonresponsive.[2] The factu-

---

1. The technical proposal was to cover "life cycle costs", performance and the adaptability of the new buses to DART's existing equipment. "Life cycle cost" was to include information on fuel economy, air conditioning, brakes, transmission, maintenance, electrical system and engine and oil consumption throughout the life cycle of the buses.

2. Neoplan had filed a complaint in Delaware's Court of Chancery prior to filing this lawsuit. The Chancery Court found: "... representatives of GMC requested and were granted a meeting with representatives of the DART evaluation committee....

"As a result of this complaint by GMC the DART evaluation committee looked again at the

al dispute is not material based on the discussion of the law and final decision on this motion as discussed hereafter.

On the December 7 and 17 meetings between DART and GMC, the participants discussed DART's treatment of the fuel figures submitted by the three bidders. After this discussion and discussions with UMTA in Washington, DART determined that Neoplan's fuel specification did not meet the requirements of the bid proposals and that Neoplan had submitted no information at all in regard to other components of the "life cycle costs." After some communication with Neoplan which apparently did not produce a satisfactory explanation, Neoplan was disqualified and the contract was awarded to GMC, the next lowest bidder.

Shortly thereafter, Neoplan filed a protest with UMTA's regional office. In addition, Neoplan filed for injunctive relief in Delaware's Court of Chancery in an attempt to prevent GMC from going ahead with the buses. Neoplan's request for a temporary restraining order was denied. *Neoplan USA Corporation, et al v. DART, et al,* Del.Ch., C.A. No. 7139, Brown, C., (New Castle Co., Mar. 30, 1983).

Discovery began on March 31, 1983, and ended on April 25, 1983. After briefing and oral argument, the Court of Chancery denied plaintiffs' requests for a preliminary and permanent injunction. *Neoplan USA Corporation, et al v. Delaware Administration for Regional Transit, et al,* Del. Ch., Civil Action No. 7138, Brown, C. (June 13, 1983). Shortly thereafter, UMTA's regional office also denied Neoplan's protests. DART then contacted GMC and or-

dered the buses which were soon thereafter delivered and placed in service.

In the meanwhile, plaintiffs appealed Chancery's decision to the Delaware Supreme Court but they did not ask for a stay of the decision with the requisite posting of a supersedeas bond. Thus, DART consummated its purchase of the fifty-five (55) buses from GMC. The Delaware Supreme Court then dismissed plaintiffs' appeal as moot. *Neoplan USA Corporation v. DART,* Del.Supr., 482 A.2d 765 (1984).

■ Defendants maintain that Plaintiffs' claims in this action are barred by collateral estoppel and *res judicata.* Over the years, the evolution of preclusion concepts have led the commentators and courts through a maze of seemingly conflicting terminology and applications. The field is strewn with "merger", "bar", "cause of action", "collateral estoppel" and "direct estoppel" and, more recently, with "claim preclusion" and "issue preclusion."[3] For the purposes of this decision, however, the Court adopts the definitions set forth by the Supreme Court in *Migra v. Warren City School District,* — U.S. —, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1983); that is, *res judicata* may be defined as "the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Thus, *res judicata* may also be labeled "claim preclusion." Collateral estoppel, on the other hand, refers to issue preclusion because it involves "foreclosing relitigation of a matter that has been litigated and decided." *Id.*[4]

technical proposal of the three bidders." *Neoplan USA Corporation, et al v. Delaware Administration for Regional Transit, et al.,* Del.Ch., Civil Action No. 7138 at 5–6, Brown, C. (June 13, 1983). The Chancery Court record reveals that the committee had indeed extended an invitation to all bidders offering further information on its decision on the technical proposals. Affidavit of Manley Bean, Neoplan President, filed in Chancery, at 6.

3. A comprehensive review of the development of preclusion concepts is to be found in *Restatement (Second) of Judgments,* Introductory Note

to Chapter 3 (1982); *See also* 18 C. Wright, A. Miller & Cooper, *Federal Practice and Procedure* § 4402 (1982).

4. In one sense, claim preclusion is more broad than issue preclusion in that it precludes relitigation of matters that could have been raised but were not. In another sense, however, claim preclusion is more limited in that it requires both parties to have been present in the first suit while issue preclusion may be used against a party not present in the prior action. 1B *Moore's Federal Practice* § 0.441(a) (1984).

In *Migra,* the Supreme Court focused on *res judicata, i.e.,* claim preclusion. That case involved a situation similar to the one in the instant case in that the plaintiff did not litigate her section 1983 claim in the state court proceeding and ·then argued that the state court judgment would not prevent her from proceeding with the 1983 claim in federal court. The Supreme Court held that a federal court must give a state court judgment the same preclusive effect it would be given under the law of the state in which it was rendered, even when the federal cause of action had not been addressed in the state court. *Id.* 104 S.Ct. at 896.

■ Thus, this Court must look to Delaware law of claim preclusion to determine if the present litigation should be barred. Under Delaware law, *res judicata,* as that term was used earlier, permits "a final judgment upon the merits rendered by a court of competent jurisdiction [to] be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party or his privies." *Epstein v. Chatham Park, Inc.,* Del.Super., 2 Storey 56, 52 Del. 56, 153 A.2d 180, 184 (1959). Historically, the doctrine was invoked only to bar the relitigation of the same cause of action. *Ajax Rubber Co. v. GAM,* Del.Super., 3 W.W. Harr. 73, 33 Del. 73, 130 A. 395 (1925). The modern view of *res judicata* in Delaware is substantially more broad and bars later litigation of any claim arising out of the same transaction that formed the basis for the prior adjudication. *Maldonado v. Flynn,* Del.Ch., 417 A.2d 378, 381 (1980), *rev'd on other grounds,* Del.Supr., 430 A.2d 779 (1981). The theory of this rule is that a transaction gives rise to only one claim, regardless of the number of ways the claim may be asserted. *Id.* Broadly speaking, therefore, it is apparent that Delaware law recognizes "claim preclusion" as

that term is defined by the Supreme Court in *Migra.*

■ In Delaware, when a defendant contends that claim preclusion bars a subsequent action, he must demonstrate: (1) that all the elements of *res judicata* [5] exist; (2) that the same transaction forms the basis for the prior and subsequent suits; and (3) that the claim for relief could have been properly presented in the prior action. *Id.* at 383.

■ The elements of *res judicata* were set forth in *Epstein v. Chatham Park, Inc.,* 153 A.2d at 184. *Res judicata* exists when there has been a final judgment upon the merits rendered by a court of competent jurisdiction in the absence of fraud or collusion between the same party or his privies. *Id.*

■ The Plaintiffs have argued that there was no final judgment on the merits in the Chancery action because the Delaware Supreme Court dismissed their appeal as moot. The Plaintiffs, however, are responsible for that dismissal. They failed to file a supersedeas bond. "It would be quite destructive to the principle of judicial finality to put such a litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his own right of appeal." 1B *Moore's Federal Practice* § 0.416(6). In this case, the Plaintiffs' failure to take the appropriate steps to preserve their right to appeal is the equivalent of the failure to appeal at all. *Epstein,* 153 A.2d at 185. Thus, the Chancery Court decision must be regarded as a final adjudication on the merits.

Secondly, the requirement that the judgment be rendered by a court of competent jurisdiction in the absence of fraud or collusion is not contested here. Finally, as to the requirement that the decision must pertain to the same parties (or privies) as is appearing in the second action, that prong of the test is met except for GMC.[6]

---

5.  *Res judicata* as used here connotes Delaware's earlier view of that term which is consonant with "issue preclusion."

6.  The effect of the Chancery Court decision on Neoplan's claim against GMC will be addressed in the later discussion of collateral estoppel.

■ In order for claim preclusion to bar subsequent action, a litigant must demonstrate not only that the elements of *res judicata* (issue preclusion)[7] have been satisfied but also that the same transaction provides the basis for the prior and subsequent suits and that the claim for relief could have properly been presented in the prior action. *Maldonado*, 417 A.2d at 383. In the present case, it is clear that the same transaction that gave rise to the state court action has spawned the litigation in this court. Even the Plaintiffs do not appear to contest the fact that the series of events giving rise to both the federal and state cause of action are substantially identical.

■ The next consideration, whether the claim for relief could have been properly presented in the prior case, deserves greater attention. The issue presented is whether the Court of Chancery would have had jurisdiction to hear a section 1983 action and grant a remedy at law along with any necessary equitable relief. Although there is no explicit Delaware law on the issue of whether the Delaware Chancery Court has jurisdiction to hear section 1983 actions, other decisional law indicates that it does. First of all, the Court of Chancery does have jurisdiction to rule on federal constitutional rights. *Belton v. Gebhart*, Del.Ch., 32 Del.Ch. 343, 87 A.2d 862 (1952), *aff'd*, Del.Supr., 33 Del.Ch. 144, 91 A.2d 137 (1952), *aff'd*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). Even more important-

tantly, the Supreme Court has recognized that state courts have concurrent jurisdiction with federal courts over section 1983 actions. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

■ ■Finally, it is well settled that Chancery could have awarded money damages in a situation such as this where the primary cause of action is for injunctive relief. "[I]t is settled law that when equity obtains jurisdiction over some portion of the controversy it will decide the whole controversy and give complete and final relief, even though that involves the grant of a purely law remedy such as a money judgment." *Wilmont Homes, Inc. v. Weiler*, Del.Supr., 42 Del.Ch. 8, 202 A.2d 576, 580 (1964).[8]

In spite of the fact that Chancery would have heard their case, Plaintiffs maintain that they could not have proceeded with an action seeking both legal and equitable relief because of the doctrine of election of remedies.[9] From the cases cited by Plaintiffs in support of their argument, it appears as if what they are really referring to is *not* the doctrine of election of remedies but Delaware case law suggesting that the same cause of action cannot be pursued simultaneously in a law and equity court as long as the plaintiff "may obtain complete relief in either court." *Wilmington Trust Co. v. Barry*, Del.Super., 397 A.2d 135, 138 (1979). Since it is well settled that Plaintiffs could have pursued both claims in the Chancery action, their only obligation was to bring both claims in one state court, the very thing they did not do.

---

7. See, footnote 5, *supra*.

8. Despite the settled law, Plaintiffs maintain they were not sure the Chancery Court would have heard their action. In support of this proposition, they cite two instances where cases were dismissed in Chancery because of the lack of an equitable claim. *Chateau Apartments Co. v. City of Wilmington*, Del.Supr., 391 A.2d 205 (1978); *Reeves v. Transport Data Communications, Inc.*, Del.Ch., 318 A.2d 147 (1974). Those cases are inapposite to the situation in the present case where Plaintiffs clearly had an equitable claim to be presented in Chancery. Plaintiffs have cited no authority for the proposition that Chancery may not provide a remedy

at law as well as an equitable remedy when it has proper equitable jurisdiction.

9. The doctrine of election of remedies states that by asserting a choice of inconsistent claims for relief in a judicial proceeding, a litigant is precluded from advancing inconsistent claims in subsequent litigation. However, if two causes of action that are not mutually inconsistent arise from a single course of events, the doctrine of election of remedies does not require that a plaintiff who chooses to assert one cause of action will be precluded from asserting the other. 1B *Moore's Federal Practice* § 0.405(7) (1984).

■ Plaintiffs' final argument is that the Defendants waived their right to claim a bar to this suit because Defendants did not object to Plaintiffs' filing only one claim in Chancery Court. In support of this proposition, Plaintiffs rely on one case, *Weekes v. Atlantic National Ins. Co.*, 370 F.2d 264 (9th Cir.1966). The *Weekes* case differs substantially from the present situation in that it involved two actions simultaneously pending in state and federal courts. The Ninth Circuit found that the parties' settlement of one action did not bar the litigation of the previously filed personal injury action in federal court where the defendant did not object to the continued litigation at the settlement. In the present case, two actions were *not* pending simultaneously and the Defendants were *not* in a position to second guess the Plaintiffs' strategy. Indeed, the proposition advanced by Plaintiffs, if given its full import, would require Defendants to suggest that Plaintiffs bring additional claims against them in order to preserve the defense of *res judicata.*

Claim preclusion clearly bars the Plaintiffs' from using the guise of a section 1983 suit to litigate a claim in federal court that should have been brought in the Court of Chancery. In spite of this bar to their action against DART and the individual Defendants,[10] the Plaintiffs argue that the suit against GMC can go forward for two reasons: first, because the Plaintiffs did not have an opportunity to fully litigate the claims brought against GMC in the present action in Chancery Court and, second, because GMC was not a party to the Chancery action.

■ Since GMC was not a party to the Chancery action, claim preclusion does not block Neoplan's claim against them. However, collateral estoppel, *i.e.*, issue preclusion, may serve to bind a plaintiff against a defendant not a party to the prior action if the issue in question was "fully litigated in the prior case." *Chrysler Corp. v. New Castle County*, Del.Super., 464 A.2d 75, 80 (1983).

■ Delaware law allows collateral estoppel to preclude litigation of an issue in a subsequent suit between different parties when three requirements are met. First, the issue to be concluded must be the same as that involved in the prior action. *Coca-Cola Co. v. Pepsi-Cola Co.*, Del.Super., 6 W.W.Harr. 124, 36 Del. 124, 172 A. 260, 263 (1934). Second, the issue must have been actually raised and fully litigated in the prior action. *Auerbach v. Cities Service Company*, Del.Supr., 36 Del.Ch. 554, 134 A.2d 846, 851 (1957). Finally, the issue must have been necessary to the outcome of a valid prior judgment. *Chrysler Corp. v. New Castle County*, 464 A.2d at 80.

■ In deciding whether the issues in both actions are similar enough to meet the requirements of issue preclusion, it must be remembered that a new contention is not necessarily a new issue. "Any contention that is necessarily inconsistent with a prior adjudication of a material and litigated issue, then, is subsumed in that issue and precluded by the prior judgment's collateral estoppel effect." 1B *Moore's Federal Practice* § 0.443(2). The best way to determine the similarity of issues in two actions is to examine the Plaintiffs' complaint. Plaintiffs' complaint in the Chancery Court alleges that DART acted improperly in discussing the bids with GMC following the opening of the sealed bids. Indeed, Chancellor Brown regarded this allegation as one of the mainstays of plaintiff's complaint and stated in his June 13 opinion: "Neoplan's argument breaks down to two separate thrusts.... It argues that the *ex parte* meddling by GMC after Neoplan had been declared to be the apparent successful bidder violates the bid specifications and requires the disqualification of GMC." *Neoplan USA*, Civil Action No. 7138 at 7.

Plaintiffs' complaint in the action filed in this court makes substantially similar alle-

---

**10.** The individual employees of DART named in this action were not named defendants in the Chancery action. However, as parties in privity with DART, the Chancery decision is binding to preclude suit against them as well as DART.

gations, albeit in greater detail. Plaintiffs allege that "[D]efendant, GMC, by ... its active in-person solicitation and representations to DART, constituted a bad faith and wrongful interference with the prospective contractual relations between DART and GMC." Complaint ¶ 9. In this case, the Plaintiffs' allegation that GMC's actions were a "bad faith and wrongful interference" with the contractual relations between DART and GMC is inconsistent with the Chancery Court's finding that "nothing ... in the arguments on the expanded record ... would have required the disqualification of GMC by DART." *Id.* at 10. Indeed, if GMC had wrongfully interfered with the prospective contractual relations between DART and GMC, they would have had to have been disqualified under the stated conditions of the bid procedure. "Bidders and/or their representatives shall not be permitted to observe, participate in or otherwise be involved in the proceedings of (DART's evaluation) committee. Attempts to take such action shall be cause for the bidder to be declared non-responsible." *Id.* at 10. The Chancery Court found such sanctions to be unwarranted because the activities of GMC did not violate the bid procedure.

Under Delaware law, the next requirement to be met in order for issue preclusion to apply is that the issue must have been "actually litigated and determined in the first proceeding." *Auerbach v. Cities Service Co.*, 134 A.2d at 851. The excerpts from the Chancery opinion already quoted indicate that the issue regarding the interference between GMC and DART was actually litigated. Indeed, one of the major issues addressed and determined by Chancery was the alleged "ex parte meddling" by GMC. *Neoplan USA*, Civil Action No. 7138 at 7.

Finally, the Court must determine whether the findings of the Chancery Court con-

cerning the interference of GMC in the bidding procedures was actually necessary to the determination of the Chancery judgment. *Chrysler Corp.*, 464 A.2d at 80. Again, from the language of the Chancery opinion, it is clear that such findings were necessary to the judgment. Without a finding that GMC did not wrongfully interfere with the relationship between DART and Neoplan, the injunction preventing the consummation of the contract between DART and GMC would have been granted since GMC would no longer have been eligible to have been awarded the contract.[11]

Thus, issue preclusion, applies in this case and Plaintiffs cannot relitigate conclusive findings of the state court in this court. For the foregoing reasons, Defendants' motion to dismiss is granted.[12]

---

**11.** Thus, Plaintiff's allegation that the sole determination made by the Chancery Court was whether to grant "GMC the contract despite actions taken by GMC" is misleading. If the Chancery Court had found that any action by GMC interfered wrongfully with the bid decision, the language of the bid procedure itself

required its disqualification. *Neoplan USA*, Civil Action No. 7138 at 10.

**12.** Since the Defendants' motion to dismiss is granted on the grounds of claim preclusion and issue preclusion, the Court finds it unnecessary to consider Defendants' immunity arguments.