IN THE SUPREME COURT OF THE STATE OF DELAWARE

UNITED PARCEL SERVICE, § 
§ No. 233, 2023
Employer Below, §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ C.A. No. N22A-07-002
RUDOLPH HAWKINS, §
§
Claimant Below, §
Appellee. §

Submitted: December 6, 2023
Decided: February 19, 2024

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

On this 19th day of February 2024, having considered the briefs and the record

below, it appears to the Court that:

(1)    United Parcel Service appeals from a Superior Court order affirming a

decision of the Industrial Accident Board denying its motion to dismiss a former

employee's petition to determine additional compensation due under the Workers'

Compensation Act.[1]  We find no merit to the appeal and therefore affirm the Superior

Court's judgment.

---

[1] *Hawkins v. United Parcel Serv.*, 2023 WL 3749355 (Del. Super. May 30, 2023) [hereinafter "*Super. Ct. Order*"].

(2) On October 28, 2018, while working as a driver for UPS, Rudolph Hawkins sustained a compensable work-related injury to his lumbar and thoracic spine and his left trigger and ring fingers. During a thirty-minute break, Hawkins's vehicle was rear-ended while he slept inside its sleeper berth compartment. Because of his resulting injuries, Hawkins began receiving total disability benefits, effective the following day.[2] On December 9, 2019, a little over a year after the accident, Hawkins filed a petition for additional compensation with the IAB (the "First Petition").

(3) The First Petition sought approval for two surgeries that his doctors recommended and a finding of recurrence of total disability as of October 17, 2019. In response, UPS filed a petition for review of compensation claiming that as of February 7, 2020, Hawkins was physically able to return to work (the "Petition for Review"). The parties consolidated the First Petition and the Petition for Review by stipulation on October 19, 2020.

(4) After some negotiating, the parties agreed to settle both petitions. With the settlement finalized, Hawkins withdrew the First Petition without prejudice and no longer opposed the Petition for Review. As a result and at the parties' request, the IAB issued a consent judgment on December 17, 2020, granting the Petition for

---

[2] The record is unclear as to what disability benefits Hawkins initially received immediately following the accident.

Review and terminating Hawkins's total disability benefits as of February 7, 2020 (the "Stipulation"). The parties also entered into a separate agreement regarding compensation due to Hawkins for partial disability benefits as of October 17, 2020 (the "Agreement"). Neither the Stipulation nor the Agreement explicitly addressed whether Hawkins could later seek a finding of recurrence of either total or partial disability.

(5) On April 21, 2021, Hawkins filed a second petition for additional compensation (the "Second Petition"). The Second Petition sought, among other things, a finding of recurrence of total disability for the period from the "date of back surger[ies] and [going forward]" as well as permanent impairment benefits.[3] Although the Second Petition did not specify the dates of the back surgeries, a permanency evaluation report attached to the Second Petition indicated that Hawkins had back surgery on January 6, 2020 (removal of a spinal cord stimulator implant) and on September 16, 2020 (spinal fusion).

(6) On October 12, 2021, two days before a scheduled hearing with the IAB, Hawkins withdrew the Second Petition without prejudice to give the parties additional time to negotiate a settlement. Two months later, without a settlement in place, Hawkins filed a third petition for additional compensation based, in part, on an alleged recurrence of total disability (the "Third Petition"). The Third Petition

---

[3] Am. App. to Opening Br. at A18 (Hawkins's Petition dated April 19, 2021).

was nearly identical to the Second Petition. UPS moved to dismiss the Third Petition on February 25, 2022 (the "Motion"), arguing that the Third Petition was barred by *res judicata* and collateral estoppel.

(7)     UPS made three arguments for dismissal. First, it contended that Superior Court Civil Rule 41(a)(1)—which provides that a second voluntary dismissal of a claim is with prejudice—applied to Hawkins's voluntary withdrawal of the Second Petition and thus *res judicata* barred the Third Petition. Second, it claimed that collateral estoppel barred Hawkins's claim of recurrence of total disability as of the date of his back surgeries. Lastly, it argued that any claims stemming from the surgeries were implicitly resolved by the Stipulation.

(8)     On June 6, 2022, the Board denied the Motion (the "Order").[4] It held that the Third Petition was not barred by the doctrine of *res judicata* because Rule 41(a)(1) does not apply to administrative proceedings.[5] It also held that collateral estoppel did not bar Hawkins's claim for recurrence of total disability because neither the Agreement nor the Stipulation addressed whether Hawkins might have "a future change of condition that would lead to a recurrence of total . . . disability at any point after October 17, 2020."[6]

---

[4] *Hawkins v. United Parcel Serv.*, No. 1478596, at 7 (Del. I.A.B. June 6, 2022) [hereinafter "*IAB Order*"].

[5] *Id*. at 4–6.

[6] *Id*. at 3.

(9) UPS appealed the Order to the Superior Court, which affirmed the Board's decision on May 30, 2023. UPS then timely filed a notice of appeal with this Court on June 29, 2023. On appeal, UPS repeats two of its arguments from below: (1) *res judicata* bars the Board from considering the Third Petition; and (2) collateral estoppel bars the Board from revisiting the issue of total disability.

(10) We review whether an administrative agency has applied the law correctly *de novo*.[7] Even so, we accord substantial weight to the IAB's application of legal principles in the specialized context of our state's workers' compensation scheme because it "has the occasion to give life to that scheme on a weekly basis in the many cases that come before it."[8] When a decision of the Board is appealed from the Superior Court, we review the agency's decision directly.[9]

(11) First, the Third Petition is not barred by *res judicata* under Superior Court Rule 41 because the IAB is not required to follow the Superior Court Civil Rules in its proceedings. Superior Court Civil Rule 41(a)(1) provides that a second voluntary dismissal of a claim is with prejudice.[10] A dismissal with prejudice is

---

[7] *Betts v. Townsends, Inc.*, 765 A.2d 531, 533 (Del. 2000) (citing *Oceanport Ind., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).

[8] *Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 395 (Del. 2015) (citations omitted).

[9] *Delmarsh, LLC v. Env't Appeals Bd.*, 277 A.3d 281, 289 (Del. 2022) (citations omitted).

[10] The Rule states, in relevant part, that, "[u]nless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim." Super. Ct. Civ. R. 41(a)(1).

5

considered a judgment on the merits.[11] If Rule 41(a)(1) were to apply, Hawkins's voluntary dismissal of the Second Petition would operate as a dismissal with prejudice, and therefore bar him from filing the Third Petition. We find that it does not.

(12) Under the language of the IAB's enabling statutes, the Superior Court Civil Rules do not apply to its proceedings.[12] "[T]he Delaware legislature has given the IAB broad authority to fashion its own rules"[13] and the Board has indeed promulgated its own rules (the "Board Rules").[14] There is no rule similar to Rule 41(a)(1) in the Board Rules, the Worker's Compensation Act, or the Administrative Procedures Act.[15] And UPS has not pointed to any provision of the Delaware Code that suggests, let alone requires, that the IAB must follow the Superior Court Civil Rules. Administrative agencies are creatures of statute and "derive their powers and authority *solely* from the statute creating such agencies and which define their

---

[11] *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 643 (Del. 2014) (citations omitted).

[12] See 19 *Del. C.* § 2301A(i) ("The [IAB] may promulgate its own rules of procedure for carrying out its duties consistent with Part II of this title and the provisions of the Administrative Procedures Act.").

[13] *Nobles-Roark v. Burner*, 2020 WL 4344551, at *2 (Del. Super. July 28, 2020), *aff'd*, 247 A.3d 259 (Del. 2021).

[14] *See* 19 Del. Admin. C. §§ 1331-1.0 to -31.0 (Rules of the Industrial Accident Board).

[15] *Id.*; 19 *Del. C.* §§ 2301–2397 (Workers' Compensation Act); 29 *Del. C.* §§ 10101–10161 (Administrative Procedures Act).

6

powers and authorities."[16]   Accordingly, the Superior Court Civil Rules do not govern the IAB.  It is within the IAB's sound discretion to promulgate its own rules or consider the Superior Court Civil Rules for guidance or instruction.   Any suggestion contrary to this well-settled principle is misguided.[17]

(13)   Second, collateral estoppel does not bar Hawkins's claim for recurrence of total disability because whether his total disability had terminated as of February 7, 2020 and had not recurred as of October 21, 2020 was not determined by the IAB. When the Board has determined an issue of fact necessary to its decision, "the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case."[18]  UPS argues that the Stipulation, a consent judgment issued by the IAB, has preclusive effect.  We disagree.

---

[16] *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 661 (Del. 2017) (quoting *Off. of the Comm'r, Del. Alcoholic Beverage Control v. Appeal Comm'n, Del. Alcoholic Beverage Control*, 116 A.3d 1221, 1226 (Del. 2015)) (emphasis in the original).

[17] The Superior Court cases cited by UPS—*Wright*, *Robey*, and *McIntosh*—which were not cited below, do not stand for the proposition that an administrative agency must follow Superior Court Civil Rules when its own rules fail to address an issue. *See Wright v. Quorum Litig. Serv.*, 1997 WL 524061, at *2–3 (Del. Super. Apr. 4, 1997) (applying Superior Court Civil Rule 60(b) by way of analogy); *see also Robey v. State*, 2004 WL 440378, at *1–2 (Del. Super. Jan. 21, 2004) (considering arguments by claimant and employer under Superior Court Civil Rule 15); *McIntosh v. Chrysler Corp.*, 1995 WL 339078, at *4 (Del. Super. Mar. 16, 1995) (declining to apply a Superior Court Civil Rule because applicable board rule existed).

[18] *Betts*, 765 A.2d at 534 (citing *Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995)).

(14) Consent judgments generally cannot support claims of issue preclusion.[19] When an adjudicative body approves a consent agreement, the issue adjudicated is not on the merits of the claim at issue, but rather "the fairness of the settlement as a whole."[20] Collateral estoppel applies when the facts sought to be precluded in a subsequent suit have been "actually litigated and determined" in the first case.[21] Consent judgments, by contrast, are contractual in nature, and thus we determine their preclusive effect by the intent of the parties.[22] We determine the intent of the parties by ordinary contract principles.[23] An intention to be bound in future actions should not be found unless "the language . . . affirmatively points to

---

[19] *See Arizona v. California*, 530 U.S. 392, 414 (2000); *see also Auerbach v. Cities Serv. Co.*, 134 A.2d 846, 851 (Del. 1957) (refusing to apply doctrine of collateral estoppel to consent judgment); *Town of Cheswold v. Cent. Del. Bus. Park*, 163 A.3d 710, 719 (Del. Super. 2017), *rev'd on other grounds*, 188 A.3d 810 (Del. 2018) (citing *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953) (holding "the doctrine of collateral estoppel does not apply to consent agreements[.]")).

[20] *Auerbach*, 134 A.2d at 851; *see* 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, § 4443 (3d ed. 1998) [hereinafter "Wright & Miller"] ("[T]he central characteristic of a consent judgment is that the court has not actually resolved the substance of the issues presented. To be sure, in various circumstances judicial approval of a consent judgment may require careful scrutiny of its fairness in light of the probable outcome on the merits. . . . However close the examination may be, the fact remains that it does not involve contest of decision on the merits. Any findings made as part of the approval process go to the reasonableness of the settlement, not the merits of the dispute.").

[21] *Auerbach*, 134 A.2d at 851 (citing *Petrucci v. Landon*, 107 A.2d 236, 238 (Del. Super. 1954)).

[22] Wright & Miller § 4443 n.23 (collecting sources); *see also* Restatement (Second) of Judgments § 27, cmt. e; *Town of Cheswold*, 188 A.3d at 818 (citing *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994)) ("Consent orders are interpreted like contracts.").

[23] *Town of Cheswold*, 188 A.3d at 818 (citing *Harley-Davidson, Inc.*, 19 F.3d at 148).

it," and should not be inferred from "the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the fact's existence."[24]

(15)   The Stipulation does not clearly manifest the parties' intention to be bound by UPS's allegation that "claimant's disability had terminated as of February 7, 2020."[25]   The language fails to create a mandate that Hawkins could no longer contest the facts asserted in the Petition for Review.[26]   Rather, it qualifies the facts sought to be precluded as mere allegations.[27]   The Stipulation also does not state that Hawkins agreed that UPS's factual allegations would be subject to preclusion.[28]   The parties likewise did not agree that a claim for recurrence of total disability was forever barred or that Hawkins's disability had not recurred as of the filing of the

---

[24] *Sarkis v. Harsco Corp.*, 332 A.2d 156, 158–59 (Del. Super. 1975) (quotation omitted); *see also* 50 C.J.S. *Judgments* § 1051 (2023) (citations omitted) ("[C]onsent judgments do not have issue preclusion effect unless such intent is clearly manifested or reflected. . . . The consent decree must contain far-reaching preclusive language."); *Am. Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 272 (5th Cir. 2005) (citing *Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239, 241 (5th Cir. 1988)) ("Because [the] claims were settled, and the settlement agreement did not indicate that the judgment of dismissal should be considered conclusive on the matter of fault, the issue was never actually litigated."); *Amador County v. Salazar*, 640 F.3d 373, 384 (D.C. Cir. 2011) (quoting *Otherson v. Dep't of Justice, INS*, 711 F.2d 267, 274 n.6 (D.C. Cir. 1983)) ("Preclusion is appropriate when the stipulation clearly manifests the parties' intent to be bound in future actions.").

[25] Am. App. to Opening Br. at A12 (Stipulation for Termination).

[26] *See De Prins v. Michaeles*, 942 F.3d 521, 525 (1st Cir. 2019) (holding collateral estoppel did not apply where there was "no indication that the parties intended the agreement to be binding on the issue").

[27] Am. App. to Opening Br. at A12 ("[T]he carrier filed a Petition for Review of Compensation on February 7, 2020, alleging that claimant's disability had terminated as of February 7, 2020[.]").

[28] *Id.* ("Claimant no longer opposes the carrier's Petition to Terminate his Temporary Total Disability benefits[.]").

Stipulation. At bottom, the facts UPS seeks to preclude—that Hawkins's total disability had terminated as of February 7, 2020, and had not recurred as of October 21, 2020—were not actually litigated before and determined by the IAB. Accordingly, the Board did not err when it held that collateral estoppel did not bar Hawkins from bringing his claim for recurrence of total disability.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *N. Christopher Griffiths*
Justice